## UNITED STATES v. CHIN SING QUONG.

(District Court, N. D. New York. August 2, 1915.)

1. ALIENS ⚖══32—DEPORTATION OF CHINESE—EVIDENCE—ADMISSIBILITY.

In proceedings to deport a Chinese person, a paper reciting that the person declared that he came to the United States and became a member of mercantile firms and was not a laborer, verified by him before a United States commissioner, and attached affidavits of citizens averring that the affiants had been acquainted with the Chinese person for more than a year, and that during that time the affiants had personal knowledge of the fact that he was a merchant as a member of a designated firm at a designated place, are properly excluded, where the United States commissioner and the affiants were not called as witnesses, nor good cause shown why they were not produced.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ⚖══32.]

2. ALIENS ⚖══32—ADMISSION INTO UNITED STATES—CERTIFICATE OF RETURN—EVIDENCE.

Congress may determine the quantity, character, and quality of evidence that shall be required to admit an alien into the United States, or grant him a certificate of return after absence, or establish his right to remain on being found here; but, where it does not do so, the court must receive

⚖══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the testimony of all qualified witnesses and give it the weight to which it is entitled.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. &32.]

3. ALIENS &32—DEPORTATION OF CHINESE—EVIDENCE—ADMISSIBILITY.

A Chinese person may, in proceedings to deport him, establish his right to remain in the United States by the testimony of Chinese persons alone, in the absence of congressional action defining the competency of witnesses; but the court, in weighing the testimony of the Chinese witnesses, will consider the policy of Congress, as declared in Act May 5, 1892, c. 60, § 6, 27 Stat. 25 (Comp. St. 1913, § 4320), and Act Nov. 3, 1893, c. 14, § 2, 28 Stat. 8 (Comp. St. 1913, § 4324), declaring that credible witnesses, other than Chinese, are necessary to obtain a return certificate, or to prove that a Chinese was a resident of the United States at the time of the passage of the act, on his application for a certificate.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. &32.]

4. ALIENS &32—CHINESE DEPORTATION PROCEEDINGS—BURDEN OF PROOF.

In proceedings to deport a Chinese, the government must prove that defendant is a Chinese person, or a person of Chinese descent, and that he was found within the United States; but, when that is done, the burden shifts on defendant, and he has, under Act May 5, 1892, c. 60, § 3, 27 Stat. 25 (Comp. St. 1913, § 4317), the burden of establishing by affirmative proof his lawful right to remain in the United States.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. &32.]

5. ALIENS &32—CHINESE DEPORTATION PROCEEDINGS—WEIGHT OF EVIDENCE.

The right of a Chinese person sought to be deported to remain in the United States must be established by affirmative proof to the satisfaction of the judge or commissioner, and testimony that the person is a merchant, without stating the facts, is a mere conclusion.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. &32.]

6. ALIENS &32—CHINESE DEPORTATION PROCEEDINGS—APPEAL—DUTY OF COURT.

The court, on appeal from an order of a United States commissioner directing the deportation of a Chinese person, must consider and decide the case de novo, either on the evidence before the commissioner, or on entirely new evidence, or on both.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. &32.]

7. ALIENS &32—CHINESE DEPORTATION PROCEEDINGS—RIGHT TO REMAIN IN UNITED STATES—MERCHANT—EVIDENCE.

It is not incumbent on the government, in proceedings to deport a Chinese person, to prove that defendant was not a merchant; but defendant must prove that he was a merchant, by proving that he was engaged in buying and selling merchandise at a fixed place of business, conducted in his name or in the name of a firm of which he was a member, and that during the time he was so engaged as a merchant he did not engage in any manual labor, except such as was necessary in the conduct of his business as a merchant.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. &32.]

8. ALIENS &23—DEPORTATION OF CHINESE—GROUNDS.

Where, in 1901, 1902, and 1903, and before that, a Chinese person sought to be deported was a merchant in the United States, he was not required

to take out a certificate, and the fact that he subsequently became a laborer was no ground for deportation.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 76–90; Dec. Dig. ⊕⊐23.]

9. ALIENS ⊕⊐32—CHINESE DEPORTATION PROCEEDINGS—RULINGS ON EVIDENCE —HARMLESS ERROR.

Errors in sustaining objections to questions put to witnesses in Chinese deportation proceedings are not ground for reversal, where the answers, if favorable to defendant, could not have changed the result.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ⊕⊐32.]

10. ALIENS ⊕⊐32—CHINESE DEPORTATION PROCEEDINGS—EVIDENCE.

Error in sustaining an objection to a question asked a witness, testifying in proceedings to deport a Chinese person, as to whether he knew of his own knowledge whether the Chinese person was a member of a mercantile firm, was harmless, where other examination of the witness disclosed that his knowledge was founded on hearsay.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ⊕⊐32.]

11. ALIENS ⊕⊐32—DEPORTATION OF CHINESE—EVIDENCE—SUFFICIENCY.

Mere proof that a Chinese person, sought to be deported, had been in a store or about a store, was insufficient to show that he was a merchant, unaccompanied by evidence that he was the proprietor of the business, or one of the firm conducting the business.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ⊕⊐32.]

12. ALIENS ⊕⊐32—DEPORTATION OF CHINESE—EVIDENCE—SUFFICIENCY.

Evidence *held* to justify an order directing the deportation of a Chinese person for failure to show that he had been a merchant.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ⊕⊐32.]

Proceeding by the United States for the deportation of Chin Sing Quong. From an order and judgment of a United States commissioner directing the deportation of Chin Sing Quong, he appeals. Affirmed.

Harry V. Borst, Asst. U. S. Atty., of Amsterdam, N. Y.
Lester W. Bloch, of Albany, N. Y., for defendant.

RAY, District Judge. This record is so full of speeches and affirmations by defendant's counsel, which are unsupported by any testimony, that it requires study and discrimination to ascertain what the evidence itself discloses. It was established that the defendant is a Chinese person, born in China, and that he was in the United States, working as a laundryman, without any of the papers or certificates required by law to entitle him to be and remain here, if his residence and occupation in the United States have been such as to require him to have papers. It is contended that he came to this country in 1895, or 1896, and was a merchant in San Francisco, and later in Boston, before going to Albany, where he was arrested. It is claimed by the United States that this fact, or these facts, were not established by competent evidence, and the commissioner struck out the testimony of two

Chinese witnesses, who testified as to the defendant's occupation in San Francisco and Boston some years ago, and refused to consider it.

[1] He produced a paper, which was received in evidence, but not to prove the facts there stated, reading as follows:

"I, Chin Shin Quong, on oath declare that I was born in China, of Chinese parents; that in May, 1886, I came to the United States by way of San Francisco, California, where I resided six years; from thence I came to Boston, Massachusetts, where I have resided ever since; that I am now a member of the firm of Quong Ark Yuen & Co., dealers in Chinese provisions and dry goods, at No. 38a Harrison avenue, in said Boston; that my interest in said firm amounts to the sum of four hundred dollars ($400); and that I have other personal property and debts due me from various persons in this commonwealth amounting to the sum of nine hundred dollars ($900).

"I further declare that I am not a laborer, and that during the year last past I performed no manual labor other than such as was necessary in the transaction of my business as a merchant.

"My age is 25 years; height, 5 feet 1 inch. A photograph of myself is attached to this affidavit.

"[Notarial Seal.]                          his
                                  [Signed]  Chin Shin X Quong.
                                                      mark

"[Chinese characters.]
"Subscribed and sworn to before me this 20th day of November, 1896.
     "[Commissioner's Seal.]
                          "[Signed]  George P. Sanger, U. S. Commissioner.

"We, the undersigned, citizens of the state of Massachusetts, on oath declare that we have been acquainted with Chin Shin Quong, who signed the foregoing affidavit, more than one year last past, during which time we have personal knowledge that he has not been a huckster, peddler, laundryman, or otherwise engaged in skilled or unskilled labor of any kind whatsoever, but during all our acquaintance with him he has been a merchant in good standing as a member of the firm of Quong Ark Yuen & Co., at No. 38a Harrison avenue, in Boston.

"We further declare that the declaration of said Chin Shin Quong is in all respects true, and that we recognize the photograph thereto attached to be his correct likeness.          [Signed]  L. Gaddis, 15 Harrison Ave.,
                          "Wm. K. Jones, 61 Court St., Boston.
"United States of America, District of Massachusetts—ss.

"On this 20th day of November, 1896, personally appeared before me the above-named L. Gaddis and Wm. K. Jones, known to me to be reputable persons, whose statements are entitled to full credence and belief, and made oath to the foregoing.
     "[Commissioner's Seal.]
                          "[Signed]  George P. Sanger, U. S. Commissioner."

As this document is not required or sanctioned by any statute or rule of the Department of Commerce and Labor, or any department of the government, and was not at the time made or thereafter presented to or used in any court or legal proceedings, or as a part thereof, its worthlessness as evidence on the issues here is apparent. So far as the defendant is concerned, it may have been signed by him, and sworn to by him, and it may not. Sanger, the commissioner, before whom it purports to have been sworn to, was not called as a witness, and at best it is a self-serving declaration or statement. The affidavits of L. Gaddis and Wm. K. Jones attached thereto are ex parte, and not competent evidence of any fact therein stated. Neither of the said affiants was called or sworn as a witness, and they were not examined in open court, and could not have been subjected to cross-examination. These men may have known this defendant, and they may not. Some other

Chinese person going by that name, or using that name, may have appeared before Sanger and signed and swore to the affidavit. The Chinese marks thereon, if claimed to be defendant's signature, are not shown by sufficient evidence to have been made by this defendant. No good or sufficient excuse for not producing the affiant, now living, or not having his testimony taken, was given. Ample time by adjournments was given to produce witnesses.

The defendant at first stated that he entered the United States by way of Malone, a port of entry, and later that he came first to San Francisco, then to Boston and New York, and thence to Albany, where he was arrested. He made conflicting statements as to the time when he came to the United States, and told the inspector that the paper referred to was sent to him in China. When under examination before he obtained the services of an attorney, after answering a number of questions, he claimed to be sick. After an adjournment of several days, and after securing the services of an attorney, he changed his former statements and evidence in all important particulars.

The testimony of the only person not Chinese, given as to the defendant having been a merchant or engaged in that business in the United States before he became a laborer, was that of Mary J. Matthews, and is purely hearsay, except on the point that defendant had been in Albany some 18 years. She had no knowledge that the defendant was ever engaged in the mercantile business, or was at any time a merchant, in the United States. Her testimony cannot be used to prove that defendant was ever a merchant, and the commissioner so held.

The defendant called two Chinese witnesses, Lee Wo Jue and Jo Kim, to prove that this defendant, Chin Sing Quong, was a merchant in the United States during the period of registration. When their testimony was offered the commissioner said:

"It is expected, Mr. Bloch, that the testimony of these witnesses is to be used in corroboration of his claim to have been a merchant during the period of registration.

"Mr. Bloch: We intend to lay a foundation by these witnesses for corroboration by white witnesses (non-Chinese).

"The Commissioner: Under these circumstances the testimony will be received."

[2, 3] In his opinion or written decision (not the order of deportation) the learned commissioner said:

"Objection was made to the reception of the testimony of Lee Wo Jue and Jo Kim, on the question of defendant's former status as a merchant, on the ground that such fact must be established by the testimony of witnesses other than Chinese. Defendant's counsel having stated that it was intended by the introduction of such testimony to lay the foundation for subsequent corroboration by white witnesses, the objections were overruled and the testimony taken. Subsequently motions to strike such testimony out on the same ground were made, on which decision was reserved. No testimony of witnesses other than Chinese was subsequently introduced, save that of Miss Matthews, which only tends to show that defendant was in Albany for at least 18 years and had always borne a good reputation. On the question of merchant status, Miss Matthews' testimony was pure hearsay. The motions to strike out were renewed at the close of defendant's case, and decision again reserved.

"It seems proper to approach at this time the question so raised by the Assistant United States Attorney, before weighing the case as a whole, in order that, if possible, the real issues may be arrived at. Therefore the question is: Can the testimony of Chinese persons, uncorroborated by other evidence, be used to establish the defendant's former status as a merchant? Upon application for re-entry because of former status as a merchant in the United States, the applicant must 'establish by the *testimony* of two credible witnesses *other than Chinese* the fact that he conducted such business.' Act Nov. 3, 1893, § 2. To obtain a return certificate, upon proceeding abroad temporarily, the applicant must furnish in his application 'the names and addresses of two (or more) credible witnesses *other than Chinese* who are able and willing to testify' as to his former status. Rules Governing Admission, rule 15b. Where a laborer, resident in the United States during the period of registration, failed to register, he must, upon subsequent application for a certificate, 'prove by at least one credible *while* witness' that he was a resident of the United States at the time of the passage of the act. Act May 5, 1892, § 6.

"Can this defendant now come into a commissioner's court, and by proof that would not admit him if seeking re-entry from China, or be sufficient to obtain for him a certificate of residence if he voluntarily made application therefor on the ground of excusable neglect to register, establish his right to be and remain within the United States? If the commissioner were to hold that he could, such a holding, if followed in other jurisdictions, would practically result in the encouragement of unlawful entry, and would point out a way for those who unlawfully entered to thereafter establish their apparent right to be and remain within the United States, by proof that could not be accepted at a port of entry if they made lawful application for permission to enter. Nothing would then be easier than for a smuggled Chinese alien to produce any number of Chinese witnesses before the commissioner by whom he was being tried, prepared to testify that he was formerly a merchant at some place within the United States. The laws and regulations which are usually enforced at the ports of entry would become practically inoperative, so far as any practical results are concerned. Commissioners would become the sole judges of the right of an alien Chinese to enter, instead of that duty resting with the Department of Labor, as intended by the law.

"The commissioner is constrained, therefore, to hold that the evidence of Lee Wo Jue and Jo Kim, being originally admitted for the purpose of being afterwards corroborated, and no corroboration being offered, is inadmissible to prove the fact of defendant's former status as a merchant. Motion of counsel for the government to strike out their entire testimony is therefore granted."

The real question in this case is: Was this ruling, striking out the testimony, correct, or, if incorrect, was it harmless, and can the error be disregarded, or can this court now consider all the evidence, including that stricken out, and decide the case on its merits?

The value or probative force of the testimony given by Chinese persons in certain of these Chinese cases, admission, etc., has been determined by act of Congress. Clearly Congress has the right to determine the quantity and character and quality of evidence that shall be required to admit an alien person into the United States, or grant him a certificate of return after absence, etc. But, unless it does so, must not the court receive the testimony of all qualified witnesses and give it the weight to which entitled? I am not aware of any statute declaring that a Chinese person cannot establish his right to be and remain in the United States, for the reason he was a merchant at the time above referred to, by the testimony of Chinese persons alone. Testimony produced may be insufficient in quantity or quality to establish a necessary fact, but still admissible. It may not satisfy the judicial mind, but still be admissible.

I am of the opinion that, until Congress acts and establishes a rule of evidence, in such a case as this, which excludes from consideration the testimony of Chinese persons, or requires that the fact be established by non-Chinese witnesses alone, the testimony of Chinese persons is competent, and must be received and considered. The weight to be given it is quite another matter, and in determining its weight the policy of Congress as declared in the statutes referred to by the commissioner (Act May 5, 1892, § 6, and Act Nov. 3, 1893, § 2) may be considered. But, as Congress has not seen fit to provide that Chinese persons found in the United States must establish their right to remain by testimony other than that of Chinese witnesses, even though it has done so as to Chinese persons seeking re-entrance on the ground they were formerly engaged as merchants in the United States, I do not think the testimony of Chinese witnesses can be excluded on the issue of the right of a Chinese person found here to remain in the United States. Congress by express provision has made a certain character and quality of evidence necessary in the one case, but has failed to do so in the other. I do not think the courts are at liberty to supply the omission, if it be such. I find several cases where the right to remain has been established by the testimony of Chinese witnesses, and the Circuit Court of Appeals has not suggested such testimony is not competent on that issue. If it must be supplemented by other evidence from non-Chinese witnesses, still that of the Chinese must be admitted.

In Ah How v. United States, 193 U. S. 65, 75, 24 Sup. Ct. 357, 48 L. Ed. 619, and Tom Hong v. United States, 193 U. S. 517, 521, 24 Sup. Ct. 517, 48 L. Ed. 772, the court refers to the fact in one case that the defendants offered the testimony of witnesses other than Chinese that they were residents of the United States on May 5, 1902, and in the other that the defendants had shown without contradiction and by disinterested witnesses other than Chinese that the appellants, defendants, had been in the United States for periods varying from 10 to 30 years, and that from 1891 to 1895 they were carrying on a Chinese grocery in New York, etc. These remarks were made with reference to the probative force and weight of the testimony in the case, but it was not said or held that testimony from witnesses other than Chinese *must* be produced to establish a right to *remain* in the United States, defendants having been found here, or that testimony of Chinese persons on such an issue is inadmissible. There must be evidence from at least one witness other than Chinese that the Chinese person was a resident of the United States at the time of the passage of the act. Fong Yue Ting v. United States, 149 U. S. 698, 729, 13 Sup. Ct. 1016, 37 L. Ed. 905. But this does not exclude the evidence of Chinese witnesses on the question of status as a merchant.

I think the evidence of Chinese witnesses admissible; but there come the questions of who are they, what are their characters and antecedents, and what weight shall be given their testimony—what credence are they entitled to? On such an issue they cannot be ignored for the sole reason they are Chinese persons; but that fact may be considered in determining what the truth is. In United States v. Lee Seick, 100 Fed. 398, 400, 40 C. C. A. 448, it was held by the Circuit Court of Ap-

peals, Ninth Circuit, Mr. Justice McKenna sitting, that the statutory "requirement' that the mercantile character of a Chinese person prior to his departure for China must be established by two witnesses (other than Chinese) on his application for re-entry *is special,* and does *not* apply to other issues, such as the American nativity of the Chinaman, which are to be determined by the ordinary rules of evidence" (cited 193 U. S. 78, 24 Sup. Ct. 357, 48 L. Ed. 619, with evident approval).

This holding clearly indicates that while a Chinese, seeking readmission to the United States on the ground he was a resident merchant at the time of his departure from the United States, must prove such fact by witnesses other than Chinese, still when such person has not departed from the United States, and bases his right to remain in the United States on the alleged fact he was a resident Chinese merchant, and within the definition of "merchant" as specified in the act during the registration period, a different issue is presented, one not covered by the "special" provision as to the testimony that must be produced, and the defendant may present and have considered the evidence of Chinese persons. In Fong Yue Ting v. United States, 149 U. S. at page 729, 730, 13 Sup. Ct. at page 1028 (37 L. Ed. 905), the court said:

"The provision which puts the burden of proof upon him of rebutting the presumption arising from his having no certificate, as well as the requirement of proof, 'by at least one credible white witness, that he was a resident of the United States at the time of the passage of this act,' is within the acknowledged power of every Legislature to prescribe the evidence which shall be received, and the effect of that evidence, in the courts of its own government. Ogden v. Saunders, 12 Wheat. 213, 262, 349 [6 L. Ed. 606]; Pillow v. Roberts, 13 How. 472, 476 [14 L. Ed. 228]; Cliquot's Champagne, 3 Wall. 114, 143 [18 L. Ed. 116]; Ex parte Fisk, 113 U. S. 713, 721 [5 Sup. Ct. 724, 28 L. Ed. 1117]; Holmes v. Hunt, 122 Mass. 505, 516–519 [23 Am. Rep. 381]. The competency of all witnesses, without regard to their color, to testify in the courts of the United States, rests on acts of Congress, which Congress may at its discretion modify or repeal. Rev. Stat. §§ 858, 1977. The reason for requiring a Chinese alien, claiming the privilege of remaining in the United States, to prove the fact of his residence here, at the time of the passage of the act, 'by at least one credible white witness,' may have been the experience of Congress, as mentioned by Mr. Justice Field in Chae Chan Ping's Case, that the enforcement of former acts, under which the testimony of Chinese persons was admitted to prove similar facts, 'was attended with great embarrassment, from the suspicious nature, in many instances, of the testimony offered to establish the residence of the parties, arising from the loose notions entertained by the witnesses of the obligation of an oath.' 130 U. S. 598 [9 Sup. Ct. 627, 32 L. Ed. 1068]. And this requirement, not allowing such a fact to be proved solely by the testimony of aliens in a like situation, or of the same race, is quite analogous to the provision, which has existed for 77 years in the naturalization laws, by which aliens applying for naturalization must prove their residence within the limits and under the jurisdiction of the United States, for five years next preceding, 'by the oath or affirmation of citizens of the United States.' Act March 22, 1816, c. 32, § 2, 3 Stat. 259; Act May 24, 1828, c. 116, § 2, 4 Stat. 311; Rev. Stat. § 2165, cl. 6; 2 Kent, Com. 65."

In United States v. Lee Huen (D. C.) 118 Fed. 442, at pages 463, 464, this court considered the question as to the weight to be given the testimony of Chinese persons, and after years of experience in dealing with them, and in considering the weight to be attached to their testimony, I have found no occasion to change or modify the views there expressed.

[4] When a Chinese person found within the United States is arrested, charged with being unlawfully within the United States, and brought before the court, the burden is placed upon him by statute of establishing by affirmative proof, to the satisfaction of the justice, judge, or commissioner, his lawful right to remain in the United States. Act May 5, 1892, c. 60, § 3, 27 Stat. 25 (U. S. Comp. St. 1913, § 4317), which reads as follows:

"Sec. 3. That any Chinese person or person of Chinese descent arrested under the provisions of this act or the acts hereby extended shall be adjudged to be unlawfully within the United States unless such person shall establish, by affirmative proof to the satisfaction of such justice, judge, or commissioner, his lawful right to remain in the United States."

The burden is on the United States to prove that the defendant is a Chinese person, or person of Chinese descent, and that he was found within the United States. When this is done, the burden rests on such Chinese person, or person of Chinese descent, to *prove* that he has a lawful right to remain in the United States. He must sustain the burden of proving to the satisfaction of the judge or commissioner, in such a case as this, that he was a merchant as defined in the statute, which says:

"The term 'merchant,' as employed herein and in the acts of which this is amendatory, shall have the following meaning and none other: A merchant is a person engaged in buying and selling merchandise, at a fixed place of business, which business is conducted in his name, and who during the time he claims to be engaged as a merchant, does not engage in the performance of any manual labor, except such as is necessary in the conduct of his business as such merchant."

The evidence in this case, considering it all, fails to show that this defendant was ever a merchant in the United States as thus defined.

[5] The statute plainly reads and declares to the effect stated, and is not, so far as I can see, open to construction or so obscure that it requires to be supplemented by judicial legislation. The right to remain in the United States is to be established by *affirmative proof* and *to the satisfaction* of the justice, judge, or commissioner. If the testimony rises to the dignity of *proof,* and is clear and credible—that is, comes from persons the judge or commissioner is satisfied are entitled to full credit and who know whereof they speak, and is also convinced the witnesses are not mistaken—then it is the duty of such judge or commissioner, as the case may be, to be satisfied, if there is no contradiction. Neither court nor commissioner has the right to arbitrarily disregard such testimony, if there be enough in quantity and quality to convince the judicial mind, and which ought to convince it. But it is not enough that one or two, or even six, Chinese witnesses, or witnesses of any other nationality, merely *say* that the Chinese person was a merchant some 18 or 20 years prior to the time of the giving of his or their testimony. The minds of honest men are not so constituted that they do not either forget or commit errors of memory. Again, such a statement is a mere conclusion. The facts establishing the status of a merchant must be proved. In this case the testimony of Lee Wo Jue and of Jo Kim is far from being satisfactory, or convincing, or conclusive. The testimony of the defendant

himself, standing alone, is not satisfactory. In view of his interest and contradictory statements, it becomes worthless.

[6] It is the duty of the court on appeal to consider and decide the case de novo, either on the evidence adduced before the commissioner, or on entirely new evidence, or on both. As the evidence of these Chinese persons was reduced to typewriting and is before the court, and the appellant has submitted the case thereon, this court may consider it and determine its value; and this the court has done, treating it all as in the case and before the court for consideration. In short, the court reverses the ruling of the commissioner striking out the testimony of the two Chinese witnesses named, Lee Wo Jue and Jo Kim, and admits same, and considers it.

[7] To establish that this defendant was a merchant during the period of registration, it was necessary for him to prove that he was engaged (1) in buying and selling merchandise; (2) at a fixed place of business; (3) that such business was conducted in his name, or that of a firm of which he was in fact a member; and that (4) during the time he was so engaged as a merchant he did not engage in any manual labor, except such as was necessary in the conduct of his business as such merchant. These are the requirements of the statute. It has been decided that membership in a firm is all sufficiently proved if his name appears in the books of such firm and shows that the defendant was a member thereof. Lee Kan v. U. S., 62 Fed. 914, 10 C. C. A. 669; United States v. Wong Ah Gah (D. C.) 94 Fed. 831. See, also, 193 U. S. 517, 521, 24 Sup. Ct. 517, 48 L. Ed. 772.

In this case the witnesses did not attempt to testify that this defendant was actually engaged in buying and selling merchandise, and neither of them testified to facts from which the main fact could properly be inferred. The *fixed* place of business was designated. There was no offer or suggestion of proof or testimony that during the time referred to this defendant did not engage in and perform manual labor, except such as was necessary in the conduct of his business as such merchant. Finally, it is evident, in reading the testimony of these Chinese witnesses, that they spoke from hearsay and were swearing that defendant was a merchant for the reason he told them he was engaged in business. It was not incumbent on the government to prove that this defendant was *not* a merchant as defined in the statute; but it was incumbent on the defendant to prove that *he was* such merchant, or at least, to prove that he was *not* a laborer, and so subject to deportation as such.

In United States v. Quan Wah, 224 Fed. 420, —— C. C. A. ——, decided June 8, 1915, the Circuit Court of Appeals in this circuit decides;

"It is quite evident that Judge Chatfield found this unpersuasive testimony sufficient to call for a reversal of the commissioner's decision, because he held that a Chinese person did not have the burden of showing his right to remain in this country, and that it was for the government to show affirmatively that he was not a merchant, nor a merchant's son, and that he never had a statutory certificate. Since we construe the statute differently, and have held (U. S. v. Hom Lim, 223 Fed. 520, —— C. C. A. ——, May 12, 1915) that the burden of showing his right to remain is on the Chinese person, we reach a different conclusion upon the same proof."

Judge Chatfield, who reversed the commissioner's order directing deportation, was therefore reversed.

[8] If in 1901, 1902, and 1903, and before that, this defendant was a merchant in the United States, he was not required to take out a certificate. If such was the fact, then the further fact that he subsequently became and now is a laborer is no ground for deportation. United States v. Lee Chee, 224 Fed. 447, —— C. C. A. —— (C. C. A., Second Circuit, Lacombe, Coxe, and Rogers, JJ., decided June 8, 1915). I am assuming that, after 1903, he did not return to China, and later return to and enter the United States contrary to law. It is worthy of note that in both these cases, just cited and recently decided by the Circuit Court of Appeals in this (the Second) circuit, the only witnesses produced in behalf of the defendants were Chinese persons, and that in both cases the defendants claimed they were merchants, etc., as here. No suggestion was made that their right to remain in the United States could not be established by the testimony of Chinese witnesses alone. In the one case the order of deportation was affirmed (reversing the District Court), while in the other case judgment reversing the order of deportation was affirmed.

[9] There were some erroneous rulings in sustaining objections to questions; but the answers, if favorable to the defendant, could not change the result, and such rulings are therefore harmless, and do not call for a reversal of the order of deportation. Courts will not in these days reverse orders or judgments merely to correct erroneous rulings, when same were harmless and the admission of the testimony ruled out would not change the result. If evidence offered by proper questions and ruled out *might* change the result, if answered favorably to the defendant, then there should be either a reversal or an opportunity given on these Chinese appeals to produce it.

[10, 11] The witness Lee Wo Jue said he knew the defendant, Chin Sing Quong, in San Francisco, where he, the witness, was working in a Chinese restaurant on Du Pont street: that defendant—

"was in the Chinese drug store; that is where I met him. * * * Q. Who ran that drug store? A. There was others besides Chin Sing Quong in that store. Q. Was Chin Sing Quong a member of the firm? (Objection, unless he knows—states of his own knowledge. Objection sustained. Exception.)"

Here was no error. Then:

"Q. What was Chin Sing Quong doing in San Francisco? A. He was in a Chinese drug department. Q. Do you know of your own knowledge that he was a member of the firm? (Objected to, and objection sustained.)"

This was error, if harmful; but it was not, for the next question was:

"Q. How do you know that he was connected with the Chinese drug store? A. He was a friend of mine. I have seen him quite often, and *he told me* he was in business."

He then said he went to San Francisco in 1886, and met defendant shortly thereafter. He was not permitted to say whether he knew who composed the firm running the drug business, but said defendant left San Francisco about five years after the witness first met him, which would be about 1891. The witness then said the defendant

went to Boston, and he knew *because he corresponded with him,* and for the same reason he said defendant was in business in Boston, Chinese grocery business, firm of Quong Ark Yuen. All this was hearsay, and based wholly on what defendant told him. The witness then stated that later he lived in New York City and saw defendant there some seven or eight years ago, or about 1906 or 1907. He had no letters from defendant and never saw him in Boston. He was asked:

"How do you know that he [defendant] was in business in San Francisco? A. I had some business dealings with him. Q. Is your knowledge based on what he said? A. Well, I saw him quite often, and we had talked many times, and he told me that he was in business. Q. Is there anything else that leads you to believe that he was in business, except what he said? A. Well, I went in his store, and patronized him, and saw him there."

He did not say he traded with the defendant, or that defendant bought or sold anything, or did anything whatever in the store.

Jo Kim says he knew defendant in China when a little boy, and next saw him in San Francisco, Du Pont street.

"Q. What was he doing? A. Drug store. Q. What drug store was that ? A. Jar Ning Tong. Q. Was he interested in that drug store, do you know?"

If he had been asked whether he knew anything of defendant's connection with that store, and, if so, what, giving facts and transactions within his observation, quite likely no objection would have been interposed; but the question called for a conclusion. This question was objected to, and the objection sustained.

"Q. Yo you know whether the defendant was a member of the firm that conducted that drug store?"

This was objected to, and the objection sustained. The witness was not asked to state facts, what he had seen, etc., but a mere conclusion. He was then asked if he saw defendant in Boston, and answered:

"Yes. Q. What was the defendant's business when you were in Boston? A. Grocery, everything. Q. Do you know the name of his firm? A. Quong Ark Yuen."

No member of such a firm was called as a witness. He then said the store was on Harrison avenue.

"Q. Then you say that you saw him in this grocery store in Boston in 1896 or 1897? A. Yes."

No evidence was given or offered that any one saw defendant doing anything in the store, or in connection with it. For anything that appears he was a mere laborer. The witness did not see him in any place, except China, San Francisco, and Boston. Defendant says the store was at No. 38 Harrison avenue. But what defendant did, his interest in the store, if any, and the essential facts to show he was a merchant, were not proven, nor was there an offer to prove them. Being in a store, or about a store, in the absence of evidence that the person is the proprietor, or one of the firm, if it be a copartnership, does not establish to my satisfaction that such person was a merchant. This evidence is too hazy to convince. The extent of the acquaintance between the defendant and these witnesses does not fully appear, but

it seems to have been slight. When defendant went out· of the mercantile business, and why, if he ever was in that business, is not shown.

Then comes in the contradictory statements of the defendant tending to show a made-up case. If this defendant came to the United States·in 1895 or 1896, was a merchant in San Francisco until he went to Boston, and was a merchant there, as claimed, there was no occasion for evasion or falsehood. It should be added that long and undisturbed residence in the United States raises no presumption that a ·Chinese person is lawfully here or entitled to remain. However, it is a circumstance requiring careful consideration, and in a close case should turn the scale in favor of the Chinese person.

[12] Defendant has offered no new or additional evidence· on this appeal and hearing. He has made no request so to do, or to produce his witnesses before this court. Given the opportunity, he has not availed himself of it, and it must be assumed thàt nothing new could be developed, no additional fact placed before this court., He was at liberty to do so. The act contemplates a full hearing de novo, if desired. Liu Hop Fong v. United States, 209 U. S. 453, 461, 28 Sup. Ct. 576, 52 L. Ed. 888.

The judgment of deportation is affirmed.'