### L. J. MUELLER FURNACE CO. v. CASCADE FOUNDRY CO.

(Circuit Court of Appeals, Third Circuit. May 15, 1906.)

No. 8.

1. FRAUD—ACTION FOR DECEIT—QUESTIONS FOR JURY.

In an action in the nature of one for deceit to recover damages for false representations, by which plaintiff was induced to enter into a contract, where the evidence is conflicting as to the exact language used, the question whether defendant intended to state an existing fact, or merely to express an opinion, is one of fact for the jury.

[Ed. Note.—For cases in point, see vol. 23, Cent. Dig. Fraud, § 67.]

2. SAME—FALSE REPRESENTATIONS—KNOWLEDGE OF FALSITY.

An action of deceit may be supported by proof of false representations made by defendant to influence the action of plaintiff, if defendant either knew them to be false, or was consciously ignorant or recklessly indifferent as to whether they were true or false.

[Ed. Note.—For cases in point, see vol. 23, Cent. Dig. Fraud, §§ 3-5.]

3. SAME—DAMAGES—SUFFICIENCY OF PROOF.

A plaintiff suing to recover damages for false representations, by which it was induced to enter into a contract to manufacture a large quantity of castings, which contract it afterward rescinded, cannot recover damages because of depreciation in the market value of a quantity of iron bought for use in carrying out the contract, where it is not shown how much was used before rescission of the contract, nor what was done with the remainder.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

For opinion of the Circuit Court, see 140 Fed. 791.

Frank Gunnison, for plaintiff in error.
J. W. Sproul, for defendant in error.

Before DALLAS and GRAY, Circuit Judges, and J. B. McPHERSON, District Judge.

GRAY, Circuit Judge. The plaintiff in error and defendant below (hereinafter called the defendant) is a corporation of the state of Wisconsin, located in Milwaukee, engaged in the manufacture and sale of heating furnaces. Having no foundry connected with its factory, it purchased such castings as it required in the manufacture of the furnaces, from outside foundry companies. For a number of years prior to the contract out of which this suit arose, it purchased its castings from the Walworth Run Foundry Company, of Cleveland, Ohio. On January 20, 1903, it entered into a written contract with the Cascade Foundry Company, a corporation of the state of Pennsylvania, defendant in error and plaintiff below (hereinafter called the plaintiff) for the manufacture of a certain number of furnaces,—that is, for the castings to be used in their construction. The contract covered a period of five years, and provided for the different styles of furnaces that were to be constructed under it, and for the regulation of price. This price was so much per pound, depending upon the fluctuation of the cost of iron up or down, but the weight of the parts that were to be manufactured was to be determined by taking the weights of the patterns of the different parts manufactured (these patterns being themselves castings) and adding 6 per cent. to one class of pattern weights and 8 per cent. to another class. Upon the weights thus determined, the price of the castings to be furnished by the plaintiff was to be calculated.

After some delay, the plaintiff company entered upon the active performance of its contract in May, 1903, and having manufactured a number of these castings, some time in the latter part of June, 1903, claimed the right to rescind the contract, on the ground that the method for ascertaining the weight of the castings, by adding 6 and 8 per cent. to the pattern weights, as provided for in the contract, re-

sulted in plaintiff's furnishing to the defendant much greater weight than was paid for under the terms of the contract, the excess of the weight of the castings over the pattern weight being alleged as 15 to 25 per cent. instead of 6 to 8 per cent., and that plaintiff was induced to enter into the contract, providing for this method of settling the weight, by the false representations knowingly made by the defendant company, that this mode of ascertaining weights was a just one, and would fully protect the plaintiff company, and amount to as much as the actual weights, the defendant company "being then and there in the exclusive possession of the facts from which the truth or falsity of the statement in relation to weights could be ascertained."

With this statement of the ground of liability, the plaintiff sets forth in its declaration the damages suffered by it, by reason of its attempt to perform said contract, and of its preparation for the same in the purchase of material, flasks and other appliances necessary for the execution of its contract.

The representations complained of in the declaration, which the testimony adduced by plaintiff tended to show had been made by the agent of the defendant to the plaintiff, substantially as stated, were:

"That an equitable, just and true method of ascertaining the weights of the castings required to be made under the contract aforesaid, was, by computing the same from the pattern weights, to wit, al least double radiator furnaces to be figured at eight per cent. above pattern weights, and all other furnaces at six per cent. above pattern weights; that such means of ascertaining weights was a just means, would fully protect the Cascade Foundry Company and amount to as much as actual weights; that eight and six per cent. above the pattern weights respectively, would be equal to the actual weight of the castings made, which they then and there knew to be false, the actual weight over and above the pattern weights being not less than twenty-five per cent."

At the close of the testimony, the case was submitted to the jury by the learned trial judge, and resulted in a verdict for the plaintiff. The writ of error sued out by the defendant, brings before us, as assignments of error, the refusal of the trial judge to give binding instructions in favor of the defendant, and the refusal to give certain specific instructions to the jury. The principal question raised by these assignments is founded upon the proposition, that no sufficient evidence had been offered to justify the jury in finding that the defendant company, or its officers or agents, made any false representations, inducing the plaintiff to enter into the contract made between the plaintiff and defendant, which warranted plaintiff in rescinding the said contract.

The contention of the defendant is, that the representations alleged and proved were merely expressions of opinion by the agent of defendant, that the addition of 6 and 8 per cent. to the pattern weights would be a fair method of arriving at the actual weight of the castings, and that the actual weight would not exceed the result thus arrived at, and were not representations of existing facts.

An action grounded upon alleged injury, occasioned to plaintiff by false representations of defendant, is an action in the nature of an action for deceit. Nothing is better settled then, that to be actionable,

such representations must be as to past or existing facts, and not merely promises or expressions of opinion as to future events; although the state of mind or intent of the defendant may, under certain circumstances, be regarded as a fact existing at the time the representation is made in regard to it. But the general rule is, that false representations, inducing conduct on the part of the plaintiff to his injury, to be actionable, must relate to past or existing facts, and not be mere promises or expressions of judgment or opinion.

The plaintiff in error and defendant below complains here, that the court below did not undertake to decide for itself as to the character of these representations, instead of submitting to the jury the question, whether they were mere expressions of opinion, or assertions as to an existing fact. In submitting the case to the jury, the court below correctly stated to them the distinction to be observed between representations as to past or existing facts, and mere promises or expressions of opinion, or judgment, charging them that if the representations complained of were of the latter character, the plaintiff could not recover. There was some conflict of testimony between the witnesses for plaintiff and defendant, as to the precise character of the statements made and language used by the agent of the defendant, in regard to the method suggested by him, and finally incorporated in the contract for determining the weight of the castings as a basis for payment of the same, and the true question in the case may, as a whole, be viewed as one of intent. Was it the intent of the defendant to be understood as expressing an opinion on the one hand, or as stating an existing fact upon the other, in order to influence the conduct of the plaintiff, provided always that it has been shown that plaintiff acted upon such representation in the sense intended by the defendant. As a question of intent, it was peculiarly a question for the jury. This was practically, if not expressly, the question submitted, and we think properly submitted, to the jury; and we cannot say, after a careful reading of the record, that there was nothing in the facts or circumstances proved in the case, to warrant the jury in determining it as they did.

The defendant, as plaintiff in error, has objected in his argument here, that plaintiff was permitted to give in evidence an alleged representation by defendant's agent, when urging that 6 and 8 per cent., when added to the pattern weights, would represent the actual weight, that this had been so under a similar contract with the Walworth Run people, during a period of five years. Such a representation, if made, was clearly as to the existence of a past fact. The objection urged is, that this particular representation is not set forth in the declaration, and its admission contravenes the rule, that the probata must agree with the allegata. It may be doubted whether, in an action of deceit, a plaintiff should be permitted to set up a false representation, of which, by his declaration, he has given the defendant no notice. No objection, however, was made at the trial to the admission of this evidence, and there is, in consequence, no assignment of error in that regard. If, however, we are at liberty to disregard it, when considering whether, on all the evidence, binding instructions

should have been given in favor of the defendant, we are clearly of opinion that it should not be so excluded. The Walworth Run experience was not a distinctive matter, but a part of the general statement as to false representations outlined, but not given in totidem verbis, in the declaration.

Further objection is made by plaintiff in error, that there was no evidence to show that the alleged false statements of material facts were made with knowledge of their falsity. From what has been already said, it is manifest that the representations alleged and proved to have been made by defendant's agent, related to facts peculiarly within the knowledge of the defendant. A five-years' experience as to similar contracts with the Walworth Run people, was a fact which warranted an inference by the jury of such knowledge. An action of deceit may be supported by proof of representations made by the defendant, to influence the action or conduct of the plaintiff, if defendant was consciously ignorant, or recklessly indifferent, as to whether they were true or false. While the court below failed to adequately charge the jury in regard to this point, in the view here taken, no injury could have been done the defendant on that account.

Finding no error in the refusal of the court below to give binding instructions to the jury in favor of the defendant, or in the charge of the court as to the general law applicable to the case, we are nevertheless compelled to the conclusion that the judgment below must be reversed upon the first specification of error, which is:

. "The learned court erred in refusing to affirm defendant's third point or request for charge to the jury, which was as follows: (3) The item for loss in the amount of loss sustained by the plaintiff in the depreciation of iron cannot be considered by the jury, for the reason that the plaintiff failed to show how much of the iron purchased by it was used in performing the contract before the rescission by the plaintiff, or how much was used before (or after) the rescission for any other purpose, and at what price any definite portion of it was used."

As an item of damage, the declaration set forth a purchase (presumably between January and April, 1903) of 350 tons of iron, for the purpose of performing the contract at prices varying from $26 to $22.90 per ton, the whole purchase money aggregating $8,385; that later, the value of the iron was $15 and $16 per ton, or $5,500 in all. This sum was subtracted from the former, and the difference of $2,885 is claimed as the loss on this item. At the trial, it was proved that the iron was purchased after the making of the contract in January, and before April, at the prices stated in the declaration, and that the price of iron went down gradually from that time until December, when it reached $15 or $16 per ton, or even lower. The only figures submitted to the jury to show a loss on this item, were those stated in the declaration,—that is, the difference between the price at which the iron was purchased previous to the rescission and what the same iron could be purchased for at the low price it had reached in December, 1903, a difference of about $10 a ton. It was shown on cross-examination of plaintiff's witnesses, that this depreciation in price of iron from April, 1903, to December, 1903, was a gradual one; that in July, 1903, it had gone down $2.90 per ton, and that in

August it had gone down $3 a ton, and so on. The work of producing the castings was undertaken by the plaintiff in May, 1903, and the letter of rescission was written on the 22d of the following June. Forty-one furnaces had been completed, and some iron had been wasted in defective castings, which was in consequence scrapped. No testimony was given or offered by the plaintiff, to show how much of the iron purchased had been actually used before the rescission, in making the said completed furnaces, or how much had been used in the defective castings, afterwards scrapped, nor was it shown definitely, how much of the iron so purchased was used after the rescission, or whether any or how much had been used, when the price had only fallen $3 per ton, or in what way or at what times any of the said iron was manufactured or used by the plaintiff.

As this item of loss, as stated by the plaintiff on the basis of the difference between the purchase price and the market price, in December, 1903, constituted two-thirds of the damages claimed, it was incumbent upon plaintiff to show, by competent testimony, to the jury the particulars above mentioned. There is no direct evidence of the quantity of iron on hand and unused after the rescission, and no evidence at what dates such iron was afterwards used, or what the market price thereof was at the dates of using. The plaintiff cannot be permitted in such a case to submit so important a matter to the mere conjecture and speculation of a jury, with no adequate data for ascertaining the real loss suffered.

We think, therefore, the court was in error in refusing the third request for charge to the jury, made by the defendant, as above quoted, and in permitting the misleading and insufficient testimony, upon which we have just commented, to go to the jury, without any word of explanation or caution.

The fifth assignment of error is as follows:

"The learned court erred in not sustaining the objection of the defendant to the question asked the witness, James D. Hay, by counsel for the plaintiff, at the end of the following quotation of the notes of his testimony: 'Q. Are you a competent foundryman, Mr. Hay? A. I am not the best. Q. Are you competent to testify as to whether this can be done, whether these castings can be made within the works that was specified or not, yourself? A. That I couldn't do it I don't believe. Q. But are you competent to say whether it could be done? A. I just could give my opinion, that is all. Q. What class of moulders did you have working at this work? A. I had the best moulders I could find in the city of Erie or anywhere. Q. How was your foreman? A. My foreman is a good moulder. He has worked at it for over twenty years, and I got the best moulders, men that were experienced in this business. If there was a good moulder, I said get him, it don't make any difference what you pay. I immediately raised the price on those fellows, and said pay them $3.00 a day; we are going to make these furnaces for Mr. Mueller if we can do it, and I stood faithfully by it, too. Q. Now, then, after this work and your experience, what do you say to the jury about those furnaces being made at 6 per cent. and 8 per cent. above the pattern weights? A. It can't be done.'"

Mr. Hay, when first called as a witness, had testified that he was president of the Cascade Foundry Company, but that prior to that, he had been register and recorder of Erie county, and that he had not had any experience in castings.

The qualifications of a witness to testify as to his opinion, must be

passed upon by the court, and the discretion of the trial judge is necessarily a wide one, and not reviewable, except in case of manifest mistake. If it were not that the judgment below must be reversed on other grounds, we would hesitate to deal with a question resting so largely within the discretion of the trial judge, but in view of a possible new trial, we should perhaps not pass this assignment, without expressing our opinion, that the learned judge of the court below was in error, in permitting this witness to testify as to his opinion upon such evidence as to his qualifications to do so as is disclosed by the record.

For these reasons, the judgment below is reversed, and the case is remanded to the Circuit Court, with instructions to grant a venire de novo.