### UNITED STATES v. HOM LIM.

(Circuit Court of Appeals, Second Circuit. April 13, 1915.)

No. 213.

ALIENS ☜32—PROCEEDINGS FOR DEPORTATION OF CHINESE—BURDEN OF PROOF.

A person of the Chinese race, apparently a laborer, who claims to be a native-born citizen, but produces no certificate, may be taken before a commissioner for examination as to his status, and the burden rests upon him to prove that he was born within the United States by affirmative evidence.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92, 93–95; Dec. Dig. ☜32.

What Chinese persons are excluded from the United States, see note to Wong You v. United States, 104 C. C. A. 538.]

Appeal from the District Court of the United States for the Eastern District of New York.

This cause comes here upon appeal from a decision of the District Court, Eastern District of New York, reversing an order of deportation made by the United States commissioner. The opinion of the District Judge will be found in 214 Fed. 456.

L. R. Bick, Asst. U. S. Atty., of Brooklyn, N. Y., for the United States.

M. J. Kohler, of New York City, for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. The United States Chinese and immigrant inspector went to a Chinese laundry at 610 Fulton street, Brooklyn, having with him the government interpreter and stenographer, in search of a Chinese person named Ing So, whom he did not find. He did find this defendant, Hom Lim, concededly of Chinese descent, who was working in the laundry. He questioned him through the interpreter, and the stenographer recorded the conversation. Defendant stated that he was born in the United States, but that he did not know where; that some cousins could prove where he was born. Asked where they were, he said he had heard some one mention it, but he did not know who. Asked if he had ever been arrested and discharged by a United States commissioner, he answered he didn't remember; he would have to ask "some cousins." Having testified that

his father died about 20 years ago, he was asked where he died, and answered in the United States. Asked whereabouts in the United States, he answered he did not remember. Asked with whom he lived after his father and mother died, he did not remember. Asked who was the first person he remembered living with, he answered he stayed in the Yee Hing store most of the time. Afterwards, when his testimony was read over to him for correction, he said he wished to change his statement that he lived in Yee Hing Company, and that he meant he just made calls there. Asked if he remembered ever having lived with a Chinese or American family since his birth, he said he stayed with his cousins. Asked where he stayed with them, he said in the Yee Hing Company. Asked where he stayed with them in the store, he said he went to work with his cousins in different places. Asked if he could give the address of any one of those places, he said "No." Thereupon the inspector arrested him and took him before a United States commissioner. Examination was had before the commissioner, defendant being represented by counsel, and several witnesses were examined. The commissioner held that he was not born in the United States and should be deported to China.

Appeal was taken to the District Court, where apparently none of the witnesses who had appeared before the commissioner were produced or examined. The record before the commissioner was submitted, and one additional witness was examined. This was a lady who had taught Hom Lim in Sunday school in the summer of 1904 or 1905 and had seen him at intervals since that time. Her testimony in no way related to the question of his birthplace. Judge Chatfield held that Hom Lim was born in the United States and entitled to remain therein. He reversed the order of the commissioner. It is quite apparent from the record and from his opinion that this disposition of the cause was made on the theory that the government had the burden of proof.

Counsel for defendant contends that since Hom Lim asserted, when questioned under oath, that he was born in the United States, the inspector acted without legal authority in taking him before the commissioner, without first having obtained a warrant upon affirmative testimony produced by the government showing that he was not born in the United States; also that in the case of a Chinese person who asserts that he has never been out of the United States the burden is on the government to prove that he was not born here. Authorities in support of this contention are cited on the brief. Moy Suey v. U. S., 147 Fed. 697, 78 C. C. A. 85; Gee Cue Bing v. U. S., 184 Fed. 383, 106 C. C. A. 493. But we cannot assent to these propositions.

Congress has provided a procedure whereby a person of Chinese descent, apparently a laborer, who, upon being interrogated by the inspector, produces no certificate such as the statutes call for, shall be brought before a United States commissioner for examination as to his status. Upon such examination the burden of proof is on the Chinese person to satisfy the commissioner or the reviewing court that he is entitled to remain in this country. He cannot avoid that investigation merely by stating to the inspector, even under oath, that he was

born in the United States. In view of the decision of the Supreme Court in U. S. v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040, we are satisfied that it was within the constitutional power of Congress to provide for this procedure, even in the case of Chinese persons who eventually, upon examination before the proper tribunals, succeed in establishing by satisfactory proof the proposition that they are native-born citizens. The constitutional rights of a native-born citizen are no greater and no less, whether he remain here continuously after birth, or return here after some temporary absence.

Hom Lim testified before the commissioner that he was born in San Francisco on November 29, 1888; his father's name being Hom Sing and his mother's Yee Shee. Of course he had no personal knowledge of the date or place of his own birth. It was competent to introduce testimony of declarations made to him by his parents or other near relatives as to such place and time, but examination of the record fails to disclose any satisfactory evidence of this sort. On his examination before the inspector he stated that "some cousins"—he did not know who—told him he was born in the United States. He did not know where. Before the commissioner he testified that when he was a boy a cousin named Mon Pong told him he was "born in this country"; also that between the time of his arrest and his examination before the commissioner (November 7 to December 30, 1912) he saw another cousin, Wing Gee, who told him that he knew his father well and that he (Hom Lim) was born in San Francisco—no date stated. Wing Gee was not called as a witness, nor was any excuse offered for his nonproduction. He also testified that his uncle, Hom Shed, was very sick and went to China when defendant was 14 years old, and that before going his uncle told him he had his "birth paper from a doctor" and would keep it. If the uncle were then returning to China, leaving his nephew here, the natural thing to do would have been to give him the birth certificate, or to place it with some responsible person who was expecting to stay here. There are many contradictions and inconsistencies in defendant's testimony. His narrative as to what took place when the inspector arrested him—he testified that the inspector struck and shook him—is contradicted by three witnesses who were present. Some of the inconsistencies in the recorded testimony may perhaps be explained by errors in interpretation; but his evidence is no more persuasive than was that of defendant in the Fong Pin Ngar Case, 223 Fed. 523, —— C. C. A. ——, which was argued here at the same time.

The only other material witness is a Chinaman, who testified to attending the christening feast of a 2 months old child of Hom Sing 25 years ago in San Francisco, to seeing that child with his father for 3 or 4 years afterward, and to his seeing at Hom Shed's place in New York, some 9 years after the christening, a boy of whom Hom Shed made the statement, "This is Hom Sing's son." It nowhere appears how many sons Hom Sing had, and there is nothing to show that this was the child whom the witness saw christened.

The commissioner saw and heard all these witnesses, and had an opportunity to judge of the credibility of their narratives which we

do not possess, and which the District Judge did not avail of. His conclusions as to the facts are properly accorded much weight in Jin Dun v. U. S., 164 Fed. 330, 90 C. C. A. 542. Moreover, from an independent examination of the testimony as it is recorded, we are satisfied that defendant has failed "to establish by affirmative proof to the satisfaction" of the tribunal authorized to pass upon the question "his lawful right to remain in the United States."

The order of the District Court is reversed, and the order of the commissioner is affirmed.