### UNITED STATES v. QUAN WAH.

(Circuit Court of Appeals, Second Circuit. June 8, 1915.)

No. 246.

1. ALIENS ⊙═32—CHINESE—DEPORTATION PROCEEDINGS—BURDEN OF PROOF.
    In proceedings to deport a Chinese unlawfully in the United States, the burden of showing the right to remain within the United States is on him.
    [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ⊙═32.]

2. ALIENS ⊙═32—DEPORTATION OF CHINESE—EVIDENCE—SUFFICIENCY.
    Evidence *held* to show that a Chinese had no right to remain in the United States, and could be deported.
    [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ⊙═32.]

3. ALIENS ⊙═28—CHINESE—RIGHT TO REMAIN IN UNITED STATES—MERCHANTS.
    An adult merchant in China may himself apply for papers which may insure his entry into the United States under the treaty with China; but his father, in the United States as a merchant, may not send to him in China a paper which will secure his admission.
    [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 88–90; Dec. Dig. ⊙═28.
    What Chinese persons are excluded from the United States, see note to Wong You v. United States, 104 C. C. A. 538.]

Appeal from the District Court of the United States for the Eastern District of New York.

This cause comes here upon appeal from a decision of the District Court, reversing an order of deportation made by the United States commissioner.

Melville J. France, U. S. Atty., of Brooklyn, N. Y.

James A. Donegan, of New York City, for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. The defendant is a Chinese person, who was found by the inspector in a laundry, in Marion street, Brooklyn; he was cooking in the back part of the laundry. He was examined by the inspector, through the government interpreter, the examination being reported by the stenographer, and told the following story:

He was 26 years old; born in China; married there at 23, his wife and a child born after he left China being still there. He came to this country about 2½ years before his arrest on April 22, 1913. He was farming in China just before he left there; was a farmer when he was a boy, but when old enough went into business in Sum Woey. His father came here before he did, and when Quan Wah reached New York his father was a laundryman on Mott street, where defendant saw him working on his arrival. This statement he made in response to several questions; said he was positive about it. His father did not live long after defendant came here; he died in New York but defendant did not know where he was buried. Quan Wah came here via Vancouver. Asked how he entered, he said he had a "merchant paper

of a laundry." Elsewhere he said that his father gave it to him after he entered the United States. Upon his testimony being read to him, he corrected this last statement, saying that his father gave it to his older brother, who gave it to himself, before the brother went back to China, where he died. When Quan Wah arrived here, this older brother was doing laundry work in Brooklyn. He (defendant) had been a laborer ever since he entered the United States. Interrogated as to the whereabouts of this so-called "merchant paper," he said that it might be in the store of the Sam Woh Company on Pell street, New York, in the trunk of a cousin of his who was working somewhere else, he did not know where.

The story he told before the commissioner was in some material respects quite different. In substance it was this:

When arrested he was on a visit to the Marion street laundry; had been there two days only, and was cooking a meal; had never done any laundry work. He had lived in Hartford for three years, where he was a merchant, connected with the firm of "Wing Lee Company," in which he had an interest of $1,000. He had been a merchant in Sun Woey, in the grocery business, having an interest of $1,500, which he sold for $1,400 before starting for the United States. His father was a merchant in Hartford, 124 State street, a member of the Wing Lee Company. After defendant arrived, his father turned over his interest in the firm to defendant, went back to China, and died there. He had a "merchant's paper" when he came to Vancouver, which his father had sent to him; when he received this paper his father was in Hartford. Upon receiving the paper, defendant went to Canton, when the United States consul examined him and indorsed the paper, defendant also putting his signature on it. There was no Chinese writing on the paper, but it had a photograph attached. This paper which the consul indorsed was lost in a fire at No. 12 Pell street, a short time after he arrived here.

No other witness was examined, except the inspector and the interpreter. Upon this testimony the commissioner ordered deportation. Manifestly this testimony was conflicting in several essential particulars. Moreover, important parts of it, if true, could have been readily corroborated; but no witness was called to show that his father as recently as three or four years before had been a merchant in Hartford, or that defendant himself had been a merchant there for three years.

[1, 2] This case came before the District Judge with three others, no additional testimony being taken in Quan Wah's case. The judge wrote an opinion covering all of them. It is quite evident that Judge Chatfield found this unpersuasive testimony sufficient to call for a reversal of the commissioner's decision, because he held that a Chinese person did not have the burden of showing his right to remain in this country, and that it was for the government to show affirmatively that he was not a merchant, nor a merchant's son, and that he never had a statutory certificate. Since we construe the statute differently, and have held (U. S. v. Hom Lim, 223 Fed. 520, —— C. C. A. ——), that the burden of showing his right to remain is on the Chinese person, we reach a different conclusion upon the same proof.

[3] Moreover, we do not find anything in the statute or the regulations which provides for the sort of "merchant paper" that defendant says he had. Even if his father were a merchant here, defendant was not a minor son when he left China; he was 23 years of age. We know of no paper his father could have sent from here which would secure his admission. If defendant were, as he says, a merchant in China, he could himself apply there for papers, which might insure his entry under the treaty. Such papers have been produced before us in other cases, and they always contain some writing in Chinese.

The order of the District Court is reversed.