HOEY AY SING v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit.   October 28, 1915.)

No. 1968.

ALIENS ⊘⇒32—PROCEEDING FOR DEPORTATION OF CHINESE—EVIDENCE.

Evidence *held* insufficient to establish the citizenship of a Chinese person arrested for deportation, under the statutory rule that he has the burden of proving affirmatively his right to be in this country.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ⊘⇒32.]

Appeal from the District Court of the United States for the Western District of Pennsylvania; W. H. S. Thomson, Judge.

Proceeding by the United States for deportation of Hoey Ay Sing. Order of deportation affirmed by the District Court, and defendant appeals. Affirmed.

The following is the opinion of the District Court:

This case has given me considerable thought and solicitude, being desirous on one hand of upholding the law, and on the other anxious to avoid the injustice which would result in the deportation of one who in fact was an American citizen. A citizenship in the republic is a right of great value. The law must be applied and administered as we find it. The acts of Congress are plain. Chinese cannot be naturalized, and Chinese laborers cannot be admitted into this country. By section 3 of Act May 5, 1892, c. 60, 27 Stat. 25 (Comp. St. 1913, § 4317), any Chinese person arrested under the provisions of the act shall be adjudged to be unlawfully within the United States, unless he shall establish by affirmative proof to the satisfaction of the judge or commissioner his right to remain.

It was shown that the defendant is a Chinese laborer, and being within the United States the burden thus shifts upon him to establish that he is lawfully within the country. There must not only be testimony to support this right, but the testimony should be of such character as to satisfy the court of its truth. The defendant does not produce any certificate of residence, nor claim that any such was issued to him; but he claims that he was born in the United States, of Chinese parents, who were permanently domiciled and doing business here. If this were true, he would be a citizen of the United States, and therefore lawfully within the country. I listened closely to the witnesses produced by the defendant, and have read the testimony more than once with care, but find myself wholly unsatisfied as to its truth. Although the testimony of the two Chinamen, Thick and Suey, if standing alone, might perhaps reasonably be persuasive of the fact that the defendant was born in California, yet this testimony cannot be divorced from the testimony of the defendant himself, which in my judgment is totally unreliable. In fact, the case of the defendant would be very much stronger, if the defendant had not testified at all. He does not pretend to have told the truth in many of his answers to the questions put to him in the preliminary examination. There he said he did not know his father's or mother's name, or when his father died. He did not know how long he had been in the United States; on what street in San Francisco he was born; how long he had lived there, saying that he was too little to remember the names of any of the streets. When asked where he had been living, he said: "I have no work; I go from one place to another." He said he bought his ticket himself—bought it in a small town, but did not know the name of the town where he got on the train. He later stated that he bought his ticket in Buffalo. He claimed to have had a certificate of residence, which was burned up at the time of the earthquake in San Francisco. He could not say how much he had paid for his ticket, or any place where he had worked in the United States.

⊘⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

When one's position is just and true as to any matter, he never needs to resort to falsehood or prevarication to support it. Assuming that the defendant was concealing the truth, and attempting to keep the officers of the government in the dark at the preliminary hearing, when he was examined in open court he was certainly called upon to tell the truth, and this I am satisfied he did not do. His story is that he bought a ticket in Buffalo on November 4th and got on the train there by himself; that in about an hour he felt hungry, and when the train stopped got off to get a lunch, and then boarded the train again; that when he got on the train in Buffalo he went asleep, and afterwards when he woke up he found the two men who were arrested with him in Pittsburgh; that he had never seen them before. I am thoroughly satisfied that the defendant and the other two men who were arrested with him were traveling together, that they did not take the train at Buffalo, that their tickets were bought there for Baltimore, and that they were driven by automobile to Springville, some 33 miles from Buffalo, where they took the train near midnight.

The conductor states positively that no Chinamen got on the train at Buffalo; that when the train stopped at Springville three Chinamen, at least two of whom he identified, went to get on the train; that he held them back for a moment, while the passengers were alighting from the train; that he had never seen any Chinamen get on at that station before; that they took seats near each other on the train, and kept talking together; that when he went to lift the tickets he found that they were stamped at Buffalo for Baltimore, and that he became suspicious that all was not right, and at the next stop telegraphed ahead, which was the cause of their arrest at Pittsburgh. The tickets bore the same date and were of consecutive numbers. The testimony of the conductor is fully corroborated by the company's agent and operator at Springville. He testified that three Chinamen were driven up to the station by two men in an automobile, which came from towards Buffalo; that the Chinamen went to the end of the baggage room, and stood there in the shadow of the depot awaiting the train; that they did not buy any tickets at his office; and that when the train came they got on board together. The two men remained until the train pulled out and then they drove away towards Buffalo.

This, I feel assured, is the truth, and it is inconceivable to me that the defendant should thus deliberately falsify about this matter, except upon the theory that the position which he takes as a resident is false, and that he came into this country in violation of law. Guilt is always trying to hide itself, and usually does the very thing which tends to expose rather than conceal. If the defendant and his comrades were lawfully in the country, having nothing to conceal, and being on an honest mission, they would naturally have taken the train at Buffalo; but if unlawfully within the United States, it was quite natural to flee when no one was pursuing. This act of defendant, in itself suspicious, becomes doubly so when coupled with his falsehood concerning it. I would have been glad to have been able to accept the testimony of his witnesses as to the place of his birth as true, and to have declared that he is a citizen of the United States and lawfully in the country; but I cannot be convinced that an honest cause could, in any likelihood, be so smirched with falsehood.

Under all the circumstances, I am compelled to hold that the defendant is unlawfully within the United States, and the order of the commissioner is therefore affirmed.

Lowrie C. Barton, of Pittsburgh, Pa., for appellant.

Daniel S. Horn, of Pittsburgh, Pa., for the United States.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. In the first instance the proceeding in this case was before a United States commissioner under the Chinese Exclusion Acts. The commissioner ordered the appellant to be de-

ported, and on appeal the District Court affirmed the order. Each tribunal heard and saw the witnesses, and their concurring judgment should not lightly be disturbed. The act of Congress puts the burden on the Chinese person of proving his right to be in the country—in this case, his citizenship—and after carefully reading all the evidence we see no reason to disagree with the conclusion of the commissioner and the court below that the appellant's birth in this country has not been established. United States v. Hom Lin (C. C. A. 2d Cir.) 223 Fed. 520; Fong Ping Ngar v. United States (C. C. A. 2d Cir.) 223 Fed. 523.

The order is affirmed, on Judge Thomson's opinion, which has not been elsewhere reported and will be found in the statement above.

---

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes