## MOY JIK v. UNITED STATES OF AMERICA.

---

CHINESE; DEPORTATION; CLAIM OF WITNESS; PRESUMPTION; PRIMA FACIE CASE; EVIDENCE; REVIEW ON APPEAL.

1. A person of Chinese descent claiming to be a native-born citizen of

NOTE.—On validity of statute creating prima facie rule of evidence in deportation cases, see note in L.R.A.1915C, 736.

the United States, who is required by sec. 3 of the Act of Congress of May 5, 1892 (27 Stat. at L. 25, chap. 60, Comp. Stat. 1916, sec. 4317) to establish, by affirmative proof, his lawful right to remain in the United States, is not required to make the same degree of proof as an alien who has come into the country and is attempting to avoid deportation, but is entitled to the lawful presumption of the right to remain while the other is subject to the lawful presumption in favor of deportation. The affirmative proof required is merely proof to establish a prima facie case sufficient to call for rebuttal. (*Chin Wah* v. *United States*, 43 App. D. C. 38.)   (Mr. Chief Justice SMYTH dissenting.)

2. The rule that questions of fact are not subject to review on appeal does not preclude the right of the appellate court to look into the evidence to test its sufficiency to support a judgment.

3. The rule that in a deportation case the appellate court will not review the evidence where the commissioner and the trial judge are in agreement does not prevent the appellate court from determining the sufficiency of the evidence to prove the claim of the person, who is alleged to be unlawfully within the United States, that he was born in this country, where there is no conflict in the evidence on that point.   (Mr. Chief Justice SMYTH dissenting.)

4. Testimony of a person that his parents told him he was born in a certain place is competent on an issue as to that question.

5. There is sufficient proof that a person of Chinese descent was born in the United States, in the absence of any proof to the contrary, to overcome the statutory presumption against him and to create a prima facie case in his favor, where there is the most convincing proof of his residence in this country since he was four years old; and he testified that his parents told him he was born in San Francisco, which was the place associated with his earliest recollections and where his parents resided and conducted a business until they returned to China, which was after he was fifteen years old and had gone with his uncle to Washington, where he has since maintained a permanent residence, with a steady business or occupation, and has conducted himself in such an honorable and upright manner as to have the confidence and respect of the community.   (Mr. Chief Justice SMYTH dissenting.)

6. After sufficient evidence has been given in a deportation case to make a prima facie case establishing the citizenship of a person of Chinese descent, the burden shifts to the government.   (Mr. Chief Justice SMYTH dissenting.)

7. The government, in the absence of any showing to the contrary, will be presumed to be in possession of the records required to be made

by the Chinese inspector before permission will be given for Chinese laborers to land.

8. The responsibility for failure to interrogate a Chinese witness as to any knowledge he may have had of the residence of the parents at the time of the birth of a son who claims to be a native-born citizen cannot be cast upon him where there were present the counsel for the government and the presiding justice, who could interrogate the witness.

9. Formal rules by civil and criminal procedure, the orderly reception of evidence, and the penalizing of a defendant for the possible oversight of his counsel, have little application to an inquiry as to a claim of citizenship in a deportation case in which the government has as deep an interest as the person under investigation.

No. 3079.  Submitted February 6, 1918.  Decided April 1, 1918.

HEARING on an appeal by the defendant from an order of the Supreme Court of the District of Columbia in a Chinese deportation case.          *Reversed.*

The COURT in the opinion stated the facts as follows:

This appeal is from an order of the Supreme Court of the District of Columbia adjudging that appellant, Moy Jik, "is a Chinese person found unlawfully within the United States, and not entitled to remain within the same;" and directing that he "be deported according to law from the United States to China, whence he came," and committing him to the custody of the United States marshal for that purpose.

As is usual in deportation matters, the case turns upon the sufficiency of the evidence to support the order.  Appellant testified that he was born in 1886; that his father's name was Moy Hen and his mother's name was Kong She; that he lived with his parents in San Francisco until he was fifteen years old, when he came to Washington with his uncle, Moy Chee, who died here in 1908; that he has been in Washington since 1901; that his parents lived at 740 Commission street, San Francisco, where his father conducted a store; that, after he left San Francisco, his parents returned to China, where they

both died; that he has no brothers or sisters; that, when he was six or seven years old, his parents told him that he was born in San Francisco, and that he is now unable to name anyone by whom his birth in San Francisco could be proved.

Lai Quong testified that he was fifty-four years old, and was born in China; that he is a distant relative of Moy Hen; that he came to the United States in 1890, landing in San Francisco, where he visited with Moy Hen at his store at 740 Commission street, the Quong Yick Wah Company; that, while there, he saw appellant, who was about four years old; that he left San Francisco after about two months' stay, and did not return until 1898, when he found Moy Hen and his wife still there and appellant Moy Jik, "who had grown to be a big boy;" that he also found Moy Chee, the brother of Moy Hen, who was working with Moy Hen in the store; that he came to Washington about a year before appellant came in 1901, and that appellant could speak very little English when he came to Washington. The witness also testified that "the name of the firm was Quong Yick Wah Company; Moy Hen, Moy Nai Jik, Moy Nai Shu were the members of the firm. Across the street there was a big firm, Wah Yuh, a wholesale place. There was only one firm in the building at 740 Commission street."

Other witnesses were produced, who testified to appellant's continuous residence in Washington for about fifteen years prior to his arrest, and to his good habits, honesty, and good character.

*Mr. James M. Proctor* and *Mr. Edward C. McCalmont* for the appellant.

*Mr. John E. Laskey,* United States Attorney, and *Mr. Chas. W. Arth,* Assistant, for the appellee.

Mr. Justice Van Orsdel delivered the opinion of the Court:

Appellant was apprehended under the Act of Congress of May 5, 1892 (27 Stat. at L. 25, chap. 60, Comp. Stat. 1916, sec. 4317), entitled "An Act to Prohibit the Coming of Chinese

Persons into the United States." Section 3 of the act provides "that any Chinese person or person of Chinese descent arrested under the provisions of this act or the acts hereby extended shall be adjudged to be unlawfully within the United States unless such person shall establish, by affirmative proof, to the satisfaction of such justice, judge, or commissioner, his lawful. right to remain in the United States."

If appellant was born in the United States, he is a citizen of the United States by virtue of the first clause of the 14th Amendment to the Constitution, which provides that "all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." *United States* v. *Wong Kim Ark*, 169 U. S. 649, 42 L. ed. 890, 18 Sup. Ct. Rep. 456.

In the present case, where the defendant sets up the claim that he is a native-born citizen, much depends upon the character and extent of the "affirmative proof" essential, under the statute, to sustain the burden of establishing to the satisfaction of the court "his lawful right to remain in the United States." It was contended in the case of *Chin Bak Kan* v. *United States*, 186 U. S. 193, 46 L. ed. 1121, 22 Sup. Ct. Rep. 891, that the mere claim of citizenship by a Chinaman on the ground that he was born in this country deprived the commissioner of jurisdiction to inquire further into the case, but disposing of this contention the court said: "But it is argued that the commissioner had no jurisdiction to act because the claim of citizenship was made. * * * It is impossible for us to hold that it is not competent for Congress to empower a United States commissioner to determine the various facts on which citizenship depends under that decision. [*United States* v. *Wong Kim Ark, supra.*] By the law the Chinese person must be adjudged unlawfully within the United States unless he 'shall establish by affirmative proof, to the satisfaction of such justice, judge, or commissioner, his lawful right to remain in the United States.' As applied to aliens there is no question of the validity of that provision, and the treaty, the legislation, and the circumstances considered, compliance with its requirements cannot be avoided by the mere assertion of citizenship. The facts

on which such a claim is rested must be made to appear. And the inestimable heritage of citizenship is not to be conceded to those who seek to avail themselves of it under pressure of a particular exigency, without being able to show that it was ever possessed."

It will be observed that the court was there considering primarily the question of jurisdiction of the commissioner to make the investigation, and not the question of the burden of proof. True, it is said that compliance with the provisions of the statute "cannot be avoided by the mere assertion of citizenship;" but this is far from holding that the same degree of proof shall be required of one establishing his right to remain because he is a native-born citizen, and an alien who has come into the country and is attempting to avoid deportation. In the one instance, there is the lawful presumption of the right to remain; and, in the other, the lawful presumption in favor of deportation. This is not inconsistent with the provisions of the statute which requires the person to establish by "affirmative proof" to the satisfaction of the court his right to remain. This merely means proof to establish a prima facie case sufficient to call for rebuttal. The circumstances of each case measures the weight of the burden to be borne.

This interpretation of the statute is not inconsistent with the opinion in the *Chin Bak Kan Case,* and it is fully in accord with the opinion of this court in the case of *Chin Wah* v. *United States,* 43 App. D. C. 38, where Chief Justice Shepard, speaking for the court, said: "The witnesses were unimpeached, and their testimony made a prima facie case of Chin Wah's birth in the United States and consequent citizenship. It is true that sec. 3 of the Act of May, 1892, provides that a Chinese person, or person of Chinese descent, arrested under the provisions of this act or the acts hereby extended, shall be adjudged to be unlawfully in the United States unless such person shall establish, by affirmative proof to the satisfaction of such justice, judge, or commissioner his lawful right to remain in the United States. It has been held by the circuit court of appeals for the seventh circuit that this provision does not apply in the case where the defendant asserts citizenship of the United States,

and that the burden of proof is upon the government in such a case. *Moy Suey* v. *United States*, 78 C. C. A. 85, 147 Fed. 697, 699. It is not necessary to decide this question; for it seems that the testimony was sufficient to establish the fact as required by the section. It does seem, however, that where a Chinese person has lived in the United States for a long period of time, and when arrested claims that he was a citizen of the United States by virtue of his birth in one of the States of the Union, the government should have the burden of overthrowing the case made by the defendant."

In the present case it is urged that the conclusions of the commissioner and the court on questions of fact are not subject to review on appeal. We are aware of a line of Federal cases in which the rule has been announced that, where the commissioner and the trial judge are in agreement in deportation cases, the appellate court will not review the evidence. Those were cases, however, where there was conflict in the testimony. The right to look into the evidence to test its sufficiency to support a judgment is always within the discretion of an appellate court. Fortunately, in this case, we have before us the finding of the court below, and there is no issue of fact as to the point upon which the learned trial justice turned the case. In his opinion he says: "Applying the same standards of weighing evidence to the testimony given in this case that a court would apply in determining the evidence of the place of actual birth of a person, unaffected by the question of whether he is an alien or a citizen, the court is not satisfied upon this testimony, with the burden of proof resting upon the petitioner, Moy Jik, that he has submitted any evidence legally sufficient to make a prima facie case that he was actually born in San Francisco. He is only able to testify about what he has heard. That has some weight, it is true, if taken with other evidence of probative value, but it has no weight standing alone; and if of no weight standing alone, what other evidence is there in the case which in reality adds weight to his own statement? The witness Lai Quong testifies to his actual presence in San Francisco when Moy Jik was a lad about four years of age. He testifies that he was a distant relative of the boy's father, and he there saw

him in the place where Moy Hen, his father, was then living, but he does not state that he has any knowledge of when Moy Hen came to America. He does not state that he has any knowledge of the length of time previously that he and his wife, the reputed parents of Moy Jik, left China. So, we find Moy Jik standing here to-day, with the burden of proof resting upon him, and with absolutely no testimony to account for him as being in the United States until he was four years of age, and no explanation of the previous movements of his parents that would preclude the probability of their presence in China at a time which would have enabled them to bring him to the country at any time after his birth, and between that time and when he was actually four years of age. Therefore, the court is constrained in this case to hold, unfortunately as it feels that it is, with the impression that the man himself has made upon it, that Moy Jik has not established his citizenship in the United States."

It will be observed that the case was turned, as it must be, upon the sufficiency of the evidence to account for appellant's presence in this country up to the time he was four years old. Appellant conclusively accounts for his residence here after that date. Indeed, the evidence is uncontradicted. There is some testimony to the effect that he tried to conceal himself from the inspector, and that he could not speak English when he came to Washington. But that was properly ignored by the court below. It has no relation to the sole question in this case. Was Moy Jik unlawfully brought into the United States by his parents during his infancy and before he was four years old? The veracity of the witnesses is not questioned by the trial justice. Indeed, appellant is specially commended for the impression of honesty, integrity, and sincerity which he made while on the witness stand. The court accorded full credit to appellant's testimony that his parents told him he was born in San Francisco, but held this evidence insufficient to establish the fact that he was born there. There being, therefore, no conflict in the evidence on the single point upon which the case turns, we are at liberty to examine into its sufficiency to sustain the judgment.

We think appellant, by the most convincing proof, has accounted for his residence in the United States since he was four years old. He testified that his parents told him he was born in San Francisco, the place associated with his earliest recollections. This was competent evidence,—in many instances, as in this, the only available proof. All the circumstances are consistent with his having been born in San Francisco, and inconsistent with his having been brought into the United States by his parents. The parents were not itinerant Chinamen, without a fixed abode or a permanent business. They resided and conducted a business at one place through the entire period covered by the testimony in this case until the date of their return to China. When a Chinaman, thus confronted with deportation proceedings, establishes by competent proof that he has been in the United States from his infancy; that he has maintained a permanent residence with a steady business or occupation; that he has conducted himself in such an honorable and upright manner as to have the confidence and respect of the community, and submits the only proof available as to his birth—his own testimony that his parents told him he was born in this country,—he sufficiently overcomes the presumptions raised by the statute, and establishes, in the absence of proof to the contrary, that he is a native-born citizen of the United States.

The authorities, we think, sustain this interpretation. In the case of *United States* v. *Leu Jin,* 192 Fed. 580, the defendant left San Francisco when he was eight years old, and came to New York, where he had resided twenty-four years at the time of his arrest. He did not even testify to having been told by his parents that he was born in this country, but was able only to give an indefinite account of where he resided with his parents in San Francisco. The court summed up the case as follows: "Nor does it seem strange to me that a boy leaving San Francisco twenty-four years ago, when he was eight years old, should not remember accurately the details of his early life there. The weighty fact in this case, in my opinion, is the fact that he has been in and about New York ever since he was about six years old. His own story and the evidence of the various

witnesses called as to the fact that he came to New York at that time are perfectly consistent. * * * The government's claim is that he was born in China. But he could not have come from China alone at any time before he was eight years old, and people in that station in life coming from China very rarely bring any children of that age with them. It is impossible in this class of cases to be sure what the truth is; but in my opinion the evidence in this case preponderates that the defendant was born in this country and is an American citizen."

In *United States* v. *Lem You,* 224 Fed. 519, the facts were strikingly similar to those in the present case. As here, the first four years of defendant's life were unaccounted for, except upon his own testimony as to what his parents had told him. On this point the court said: "The result of all the evidence is that it is true that this young man has known no other home than New York city for twenty-one of the twenty-five years of his life, and that fact is weighty matter in his favor, as was held in *United States* v. *Leu Jin, supra.* For the rest he testifies, and testifies alone, that according to his father's statements to him he was born in San Francisco; and his evidence, though hearsay, is admissible and competent, because the matter is one of pedigree or descent. It is undoubtedly true that the only direct testimony as to this appellant's place of birth is his statement, based upon his father's assertions. But it has often been pointed out in cases of this nature that the truth is singularly difficult to ascertain, and I think that little can ever be arrived at with absolute accuracy. If the appellant's story is not true, he is indeed a man without a country, for it is overwhelmingly proved that he has spent all his life, except infancy, in the United States."

We think the evidence is sufficient to make a prima facie case establishing appellant's citizenship. With this, the burden shifts to the government. It should be remembered that, so far as the record discloses, appellant is without relatives, far removed from the place of his birth, and, it may be assumed, without the means to ferret out corroborating witnesses. On the other hand, the government has a long arm. Facts are disclosed opening avenues by which the government, through its

agents in San Francisco, should have been able to secure valuable evidence. The name of the firm with which Moy Hen was connected and the names of his business associates, the location of their place of business, and the name of a large, established business firm across the street, were given by the witness Lai Quong. It would seem, therefore, that someone might have been found who knew Moy Hen and his wife and could have furnished proof of the extent of their residence in San Francisco.

If appellant's parents were classed as laborers, and were here at the date of the passage of the Ten-Year Chinese Exclusion Act of July 5, 1884 (23 Stat. at L. 115, chap. 220), they were required to register. If they were not here, then they could not lawfully have entered the United States after that date. If Moy Hen came here as a merchant, bringing his family with him, during the four-year period in question, he could have entered lawfully only when a certificate issued by the Chinese government, and approved by the United States consul at the port from which he sailed, a further record of which was required to be made by the Chinese inspector before permission would be given to land. The government, in the absence of any showing to the contrary, will be presumed to be in possession of these records; but it is silent, preferring, apparently, to rest upon what it regarded as the weakness of appellant's case, rather than upon the strength of its own. The government cannot rely entirely upon the presumption which the statute raises against the lawful residence of Chinamen in this country. There is a time when the burden shifts.

Appellant is assailed for failure to interrogate the witness Lai Quong as to any knowledge he might have had of the residence of appellant's parents at and prior to the time of his birth. But why cast the responsibility for this oversight, if such it was, upon appellant? There were present counsel for the government and the presiding justice, with the witness subject to be interrogated by any one or all of them. This was not a criminal prosecution. No one was seeking a victim. It was an investigation by the officers of the government to ascertain the truth as to the status of appellant's citizenship. The formal rules of civil and criminal procedure, the orderly reception of

evidence, and the penalizing of a defendant for the possible
oversight of his counsel, have little application to an inquiry
of this sort, involving the most sacred right of the citizen, a
matter in which the government has as deep an interest as the
person under investigation.   No one connected with this in-
vestigation is in position to take advantage of or criticize this
alleged oversight.   Perhaps the presumption may be indulged
that, since the witness was not interrogated on this point, it
was known by counsel that he could not testify of his own
knowledge concerning it.   But if that be so, it neither weakens
nor strengthens appellant's case, as made by the record.

The order of deportation is reversed.              *Reversed.*

Mr. Chief Justice SMYTH dissenting:

I must dissent from both the conclusions of fact and law
reached by the majority.   The act of Congress governing this
proceeding has been construed in many cases by the Federal
courts, including the Supreme Court of the United States; and
in each case, save one in the seventh circuit which has since been
disregarded in that circuit (*Moy Guey Lum* v. *United States,*
127 C. C. A. 515, 211 Fed. 91), it was held that the burden
was on the defendant to prove his citizenship.   *Chin Bak Kan*
v. *United States,* 186 U. S. 193, 200, 46 L. ed. 1121, 1125, 22
Sup. Ct. Rep. 891; *Moy Guey Lum* v. *United States, supra;*
*Lee Yuen Sue* v. *United States,* 77 C. C. A. 96, 146 Fed.
670; *United States* v. *Hom Lim,* 139 C. C. A. 68, 223 Fed. 520;
*United States* v. *Quong Wah,* 140 C. C. A. 114, 224 Fed. 420.
The Supreme Court of the United States in the *Chin Bak Kan
Case* ruled that a "Chinese person must be adjudged unlawfully
within the United States unless he 'shall establish by affirmative
proof to the satisfaction of such justice, judge, or commissioner
his lawful right to remain in the United States.'"   This re-
quires him to establish his right by more than a mere prepon-
derance of the evidence.   It has been held in a number of the
States, and I have found nothing to the contrary, that where a
party is required to produce evidence that will establish a given
proposition to the satisfaction of the triers of facts, the burden

is on him to adduce such evidence as will convince them beyond a reasonable doubt. *Carter* v. *Fulgham,* 134 Ala. 238, 32 So. 684; *Arkansas Midland R.·Co.* v. *Canman,* 52 Ark. 517, 13 S. W. 280; *Stratton* v. *Central City Horse R. Co.* 95 Ill. 25; *Ball* v. *Marquis,* — Iowa, —, 92 N. W. 691; *McMillan* v. *Baxley,* 112 N. C. 578, 16 S. E. 845; *Yelch* v. *State,* 55 Ohio St. 146, 39 L.R.A. 737, 60 Am. St. Rep. 680, 45 N. E. 6; *Willis* v. *Chowning,* 90 Tex. 617, 59 Am. St. Rep. 842, 40 S. W. 395; *Gage* v. *Louisville, N. O. & T. R. Co.* 88 Tenn. 724, 14 S. W. 73. Greenleaf lays down the same rule (1 Greenl. Ev. sec. 2) and so does the circuit court of appeals in the *Moy Guey Lum Case.* Regardless of whether this doctrine is adopted or not, it is clear to my mind that Congress by using the word "satisfaction" in the statute meant to require very strong proof of a defendant's right to remain in this country when that right was challenged by the government. Against these decisions, the holding by this court in *Chin Wah* v. *United States,* 43 App. D. C. 38, 43, is cited; but I do not think the point was there decided. In fact the court said "it was not necessary" to do so.

The majority opinion says that there is a distinction between the case of one who claims to be a native-born citizen and an alien who has come into the country and is attempting to avoid deportation. "In the one instance" it says: "There is the lawful presumption of the right to remain, and in the other the lawful presumption in favor of deportation." The statute does not say so, and we are bound by the statute. There is no presumption in favor of the defendant. He must, according to the plain letter of the act, establish his right by affirmative proof. Now there is a distinction between affirmative and negative proof. *The Virginian,* 217 Fed. 604; *Northern P. R. Co.* v. *Healon,* 111 C. C. A. 548, 191 Fed. 24; *Ætna L. Ins. Co.* v. *Ward,* 140 U. S. 76, 35 L. ed. 371, 11 Sup. Ct. Rep. 720. The former calls for action by the person required to produce it. Presumptions do not constitute such proof because they are supplied by the law, not adduced by the party. They are in their nature negative, and it cannot, therefore, be correctly said that one who relies upon them thereby establishes his case by

affirmative proof. But, as I have just said, the law raises no presumption in favor of the defendant.

Nor can I assent to the proposition that the burden of proof shifted in this case. When the law places upon a person the obligation to establish a certain proposition, that obligation remains with him throughout the trial. It does not shift. *Supreme Tent, K. M.* v. *Stensland,* 206 Ill. 124, 99 Am. St. Rep. 137, 68 N. E. 1098; *McAdams* v. *Bailey,* 169 Ind. 518, 13 L.R.A.(N.S.) 1003, 124 Am. St. Rep. 240, 82 N. E. 1057; *Boardman* v. *Lorentzen,* 155 Wis. 566, 52 L.R.A.(N.S.) 478, 145 N. W. 750. It was no part of the government's duty to search for proof which would negative defendant's right. He cannot prove his case by pointing to the government's failure. He must stand or fall by his own affirmative proof. He is like the plaintiff in an ejectment suit, who must succeed, if at all, on the strength of his own title, not by the weakness of his adversary's.

Has the defendant sustained the burden cast upon him by the law? He failed to produce any official record of his birth or to account for its absence. We may take judicial notice of the San Francisco earthquake and fire, but we cannot assume that in that catastrophe the building containing the vital statistics of the city was destroyed. His father, if we may believe his story, was a merchant in San Francisco at the time of defendant's birth. If this be true, we may assume that he was well known. "It would seem, therefore," to borrow the language of the majority, "that someone might have been found who knew Moy Hen and his wife [parents of the defendant], and could have furnished proof to the extent of their residence in San Francisco." The finding of a person possessing this knowledge was important to the defendant. He was represented by counsel who must have appreciated its significance, but he called no one to testify upon the point, nor did he offer any explanation of his omission.

As the majority opinion points out, if his parents were in the United States when he was born, the father's name should be registered. There is no evidence that it was, nor any attempt to show why this evidence was not produced. It is said

the government should have shown that he was not registered
if such was the fact; but this, according to my view of the law,
was not incumbent upon the government.   The burden, as I
have said, was on the defendant to establish his right, and he
cannot supply defects in his evidence by saying that the govern-
ment should have produced the missing links.   Lai Quong, a
relative, who came to the house of defendant's father when he
first landed in this country, must have known where the father
was during the first four years of defendant's life; yet he did
not question him about it although he had an opportunity to do
so.   In four years several trips between China and the United
States might have been made.   Again, it is said that the govern-
ment cannot rely upon this because it could have questioned
Quong; but I answer, It was not required to do so.   The statute
authorized it to stand upon the weakness of defendant's testi-
mony.   Anyhow the inference to be drawn from the govern-
ment's failure is negative, not affirmative, and negative proof
can avail defendant nothing.   The record then is a blank about
defendant's whereabouts during the first four years of his life.
This is significant.

Next:   When we find him in Washington at the age of
twenty-two he could hardly speak a word of English.   Accord-
ing to his testimony he lived over his father's store in San
Francisco until he was fifteen years of age.   We may assume
that the store was visited from day to day by people who spoke
the English language and that the boy mingled with them and
heard them converse; also that he traveled upon the street-cars,
played in the streets, roamed in the parks, places where the
English tongue was spoken, during those years, the most impres-
sionable years of his life,—years in the life of an individual
when languages are easily acquired; yet, with all those oppor-
tunities, and with such others as he may have had after leaving
San Francisco at the age of fifteen and until he reached the
age of twenty-two, when he first met Mr. and Mrs. Gregory in
Washington, he knew "practically no English to amount to
anything."   So Mrs. Gregory said.   Mr. Gregory, one of his
Sunday-school teachers, found that "he did not grasp English,"
and that it was very hard "to get him to understand" it.   These

are facts, in my judgment, which are inconsistent with his assertion of birth in this country. Had he claimed that he was born on a farm and spent twenty-two years of his life there where little or no English was spoken, his defective knowledge of the language might not be inconsistent with his claim of native birth; but where, as here, he asserts that he lived from birth until he was twenty-two in large English speaking cities,— San Francisco and Washington, fifteen years in the former and seven in the latter,—his meager knowledge of the English tongue is not in harmony with his claim.

In addition to this, we have the fact, in effect admitted by him, that when he was interviewed by the government inspector as to the names of the places in which he had worked, he said he could not give them. Two years later when confronted on the witness stand with this statement, he admitted it, but attempted an explanation by saying that what he meant was that he "could not remember how long I [he] worked in each place." This is not convincing. Again: At the time the inspector called at the laundry in Washington where defendant was engaged, for the purpose of investigating as to whether or not any Chinese were there in violation of the act of Congress, the defendant, while the inspector was talking to one of the other inmates of the place about his papers of identification and before he had spoken to the defendant, withdrew from the room and ran through a back passage way towards the street. The inspector pursued, overtook him, and brought him back. All these things were admitted. Why, I ask, did he seek to escape the inspector? He must have known the purpose of the latter's visit, for the mere fact of the inspector entering and talking to one of the other Chinamen would furnish no sufficient reason for his attempted escape. There is only one reasonable explanation, and that must lie in the belief on his part that he had violated the law, and because of this an officer was seeking his apprehension.

The majority opinion says that when a defendant "submits the only proof available as to his birth,—his own testimony that his own parents told him he was born in this country,—he sufficiently overcomes the presumptions raised by the statute,

and establishes, in the absence of proof to the contrary, that he is a native-born citizen of the United States." If this be correct, the burden he has to bear is very light indeed. Every defendant would be able to say that his parents told him that he was born in this country, and thus by the weakest kind of proof establish his right to remain unless the government assumed the burden of proving that he did not have that right. But the statute, as I have observed before, does not require the government to do this.

All that I have said thus far, however, is upon the theory that we have a right to weigh the evidence. That was done first by the commissioner, and then by the trial court. Both found against the defendant. In such circumstances we are bound by that finding, unless we are satisfied that there is no substantial evidence to sustain it. In the *Moy Guey Lum Case,* 127 C. C. A. 515, 211 Fed. 91, it was said: "We have nothing to do with the weight of the evidence. Unless we can see from the record that the commissioner and the court arbitrarily ignored the evidence adduced and entered judgment of deportation in defiance thereof, we are not at liberty to interfere." In *Quock Ting* v. *United States,* 140 U. S. 417, 35 L. ed. 501, 11 Sup. Ct. Rep. 733, 851, Mr. Justice Field speaking for the court said: "For the consideration mentioned, and the fact that the court below had the witnesses before it, and could thus better judge of the credibility to which they were entitled, we are not prepared to hold that its finding was not justified." In *Yee El (Ep.)* v. *United States,* 137 C. C. A. 537, 222 Fed. 66, the court said: "The rule may be considered settled that in matters of this kind, where the commissioner sees and hears the witnesses, the accused is not entitled to repeated appeals on the facts, and a judgment of the District Court affirming the commissioner will not be disturbed, except in a perfectly clear case or for error of law." Citing many cases. The Supreme Court of the United States in *Chin Bak Kan* v. *United States,* 186 U. S. 193, 201, 46 L. ed. 1121, 1126, 22 Sup. Ct. Rep. 891, said of the right of appeal under this act: "We are of the opinion that we cannot properly re-examine the facts already determined by two judgments below. That is the general rule,

and there is nothing to take this case out of its operation." It
is said that this rule applies only where there is a conflict in
the evidence, and that there is no conflict here because, it is
asserted, witnesses do not contradict one another on any given
point.  In the first place, I think this states the rule too nar-
rowly.  The decision of a lower court in a law case may not
be disturbed except where there is no substantial evidence to
support it.  *Ling Su Fan* v. *United States,* 218 U. S. 302, 308,
54 L. ed. 1049, 1050, 30 L.R.A.(N.S.) 1176, 31 Sup. Ct. Rep.
21; *Sioux City & P. R. Co.* v. *Stout,* 17 Wall. 657, 21 L. ed.
745; *Randall* v. *Baltimore & O. R. Co.* 109 U. S. 478, 27 L.
ed. 1003, 3 Sup. Ct. Rep. 322; *Gardner* v. *Michigan C. R. Co.*
150 U. S. 349, 37 L. ed. 1107, 14 Sup. Ct. Rep. 140.  And in
the next place, there is in my judgment a conflict of evidence,
even where there is no direct contradiction of the testimony of
witnesses, if, because of its nature or the circumstances de-
veloped, different inferences may be drawn therefrom.  *Thurs-
ton* v. *McLellan,* 34 App. D. C. 294; *L. J. Mueller Furnace Co.*
v. *Cascade Foundry Co.* 76 C. C. A. 286, 145 Fed. 596; *Cas-
cade Foundry Co.* v. *L. J. Mueller Furnace Co.* 140 Fed. 791;
*Slentz* v. *Western Bank Note & Engraving Co.* 103 C. C. A.
535, 180 Fed. 389.  In *Wong Woo* v. *United States,* 153 C. C.
A. 471, 240 Fed. 673, 675, a Chinese deportation case where
no evidence was introduced by the defendant before the com-
missioner and all the testimony before the trial court was by
deposition, the circuit court of appeals for the sixth circuit held
that these circumstances did not render "the rule limiting the
right to be repeated trial of fact in cases under this statute
inapplicable."  The decisions in *United States* v. *Lem You,* 224
Fed. 519, and *United States* v. *Leu Jin,* 192 Fed. 580, referred
to by the majority, were by trial courts, and hence do not mili-
tate against the doctrine of the cases just cited.

Chief Justice Fuller in an opinion quoted by the majority
truly said that American citizenship is an "inestimable heri-
tage."  [186 U. S. 193.]  During the past this nation has
bestowed it with lavish hand, but all too carelessly, as we are
now realizing to our bitter regret.  Laws like the statute before
us, passed for the purpose of protecting that heritage, should

be construed, where possible, so that they will surely serve the end for which they were enacted.

The judgment of the lower court, in my opinion, should be affirmed.