### UNITED STATES v. LAU TAI SANG.
### No. 2530.

District Court, E. D. New York.
April 1, 1931.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Albert ·D. Smith, Asst. U. S. Atty., of Brooklyn, N. Y. of counsel), for the United States.

Francis E. Rivers, of New York City, for defendant.

BYERS, District Judge.

This is an appeal from a judgment and order of deportation dated August 14, 1930, based upon proceedings conducted on May 22, 23 and 28, 1930, before a United States commissioner.

The matter has proceeded de novo in this court pursuant to order of Judge Galston, dated October 18, 1930. Testimony was taken in open court on November 26, 1930, and, upon reopening, on February 20, 1931.

The question at issue is whether the defendant is a citizen of the United States. He was taken into custody by the ·Immigration Service after receipt of an anonymous letter concerning defendant, on March 19, 1930, after being questioned at 163 Myrtle avenue, Brooklyn. He was there conducting a Chinese restaurant under a license issued to him by the department of health of the city of New York, permit division.

The defendant asserts that he was born in San Francisco on October 14, 1901, of Chinese parents who returned to their native country when he was about · nine years of age, leaving him in the custody of an uncle since deceased.

That his parents are living, and that, about eight years ago, he wrote to his father to secure information containing the date and place of his birth, and the reply, which he no longer has, contained the desired data.

That, by reason of the destruction of public records in San Francisco following the earthquake and fire of 1905, he is unable to produce a birth certificate. That he was brought to New York during 1911, and has lived mostly in Brooklyn ever since, and his testimony purports to show the addresses at which he has lived, and the nature of his occupation, that is, he has worked as a dishwasher and a cook and in a pool room. He has been in the restaurant at 163 Myrtle avenue for about two years.

When arrested, he stated that there was no one in this country who could state the facts concerning his birth in the United States; under date of April 19, 1930, and May 20, 1930, he caused to be published an advertisement which appeared in "Chinese Republic News," apparently a newspaper of this city, giving his name and that of his ·father, and inquiring if any one knew him, and asking such to come forward, as he had no witnesses in the proceedings then pending against him.

One Sit Bok Ho, residing at 343—3rd street, Brooklyn, called upon the defendant on May 20, 1930, in answer to · the advertisement, and claimed to have known the defendant's father, and to have seen the latter many times, and to know of the defendant's birth in San Francisco as asserted by the defendant.

Sit Bok Ho testified as a witness for the defendant at all hearings which have been held, and the importance of his narrative is obvious; if the defendant is a native of this country, he cannot be deported.

Having in mind the provisions of title 8, USCA § 284, wherein the burden of affirmative proof is laid upon the defendant, it becomes important to carefully consider the testimony of this witness in all its aspects, not only because of the importance of the case to the defendant, but to the end that ' the law itself shall be vindicated in the fairness of its operation.

Ho is about sixty-six years of age; says he came to this country in 1891, landed at Portland, Oregon, where he remained six or seven years, then went to Stockton, California, for two years, then to Sisson, in the same State, for six years, and then to San Francisco for fifteen years until the earthquake came along. The total of these periods is twenty-nine years, which would take the witness down to 1920.

He says he went to Portland for a year or so, and then returned to San Francisco where he remained for twenty-one years. That total would bring him to 1941, some ten years hence, without reference to the year and more he has spent in Brooklyn since last · he was in San Francisco.

Having first testified that he has been in this country fifty-one years, it will be seen that this period in round figures has been accounted for, so that, if the year ' of his arrival (K. S. 17) can be readjusted, one discrepancy will have been accounted for.

On the occasion of the first hearing in Court, · he said that his arrival in the United States took place in 1879 (K. S. 5) and that the answer to the question before the commissioner covering this subject had to do with his arrival in San Francisco. The question and answer appear in the minutes of the commissioner's hearing (page 76) as follows:

"Q. When did you come to San Francisco?

"A. I came here from San Francisco—

"Q. No, no; when did you arrive here?

"A. When I first came to United States in K. S. 17 (1891) or K. S. 18 (1892)

"Q. You went directly to San Francisco; is that it?

"A. When I first came to this country, I landed at Portland, Oregon."

Defendant's counsel asserts that this aspect of the testimony before the commissioner influenced his determination against the defendant, hence the necessity for the correction made at the first hearing before the court.

Ho's main calling for the twenty or twenty-five years prior to 1929 was with the canning industry (Alaska Packing Company?) and it is quite impossible to discern from his testimony whether during most of this time he supplied Chinese and Mexican labor, as an independent contractor, or whether he was a foreman or boss of one or more labor contingents required in the fish-canning industry in Alaska, but perhaps the distinction is unimportant.

The fact may be taken as established that, prior to 1901, and certainly through 1911, he was engaged, among other things, in connection with the canned fish industry in and around San Francisco, and made periodical trips to Alaska. His personal dealings involved the assumption of an indebtedness of $3,000.00 which had not been paid in full when he left San Francisco in 1929, and his explanation of the facts in that connection is not satisfactory. On the other hand, such an experience does not prove that he did not know the defendant's parents, or of the defendant's alleged birth in that city.

Ho says of defendant's father:

"I hired a lot of people who worked for me, and also his father worked there."

He continues that the defendant was born in K. S. 27 (1901), ninth month, ninth day; that he knew of the defendant's advent because the father (Lew Fook) did not come to work one day and said to the witness the next day: "I had a child born yesterday." That the witness visited the house ten days later and saw the baby, and twenty days later, when defendant was about one month old, "he had the head shaving feast, and he asked me to take dinner with him"—on which occasion he saw the baby with its mother.

He relates that his own daughter was born the same year, which fixes it in his memory. He says he saw the boy frequently before the earthquake, and knows that an abscess on his forehead left a scar. The defendant has a scar on his forehead, which he says is the result of a boil.

Ho avers that he last saw the defendant's father a year or so after the earthquake, and that the father and boy were together, and he recognized the latter because of the scar.

After the lapse of over twenty years, he called upon the defendant as has been stated, and, in their conversation concerning the defendant's relatives, including the uncle, the defendant answered all questions properly according to the witness' memory of the family; also the presence of the scar served to convince the witness of the defendant's identity.

In this testimony, Ho referred to defendant's father as having been in or near a wooden shed where fishing was done, in San Francisco Bay—"The Chinese call it Ta Laumbaum. He is a maker of ropes." It was here that Ho last saw the defendant's father; the purpose of the call being to settle a personal account.

On the last hearing in court, Ho testified that he was in the shrimp business in Alamban, a suburb of San Francisco:

"Q. Did you know Lau Tai Sang's father?

"A. Yes. I was a partner with his father.

"Q. Was his father a partner with you in the shrimp business?

"A. Yes."

It may be permitted to wonder if the foregoing testimony was thought to be necessary to buttress what was first said concerning Ho's knowledge of the defendant's father, in the belief that ordinary contact with one man out of 300 or so laborers would not establish a sufficient knowledge of his family affairs to vindicate the testimony, hence the expediency of a showing of the closer contacts which might be thought to flow from the partnership relation.

This witness says that he speaks and understands the See Yip dialect. The defendant says he speaks the Hok Gar dialect, and one reason for the most recent hearing in court (involving an interpreter versed in the latter dialect) was that the defendant made a statement at the time of his arrest, in reply to questions put to him by the Immigration Inspector, through an interpreter who speaks the See Yip and Sam Yip dialects. The argument has been made that certain questions in that statement were misunderstood by defendant, and certain of the answers were

misunderstood by the interpreter, because of this difference in dialects.

Hence, as the same difference is shown in the dialects employed by Ho and the defendant, their mutual capacity for understanding in the interview leading to the identification is necessarily drawn into question; it is said that Ho then spoke Cantonese of which the defendant understood a little.

At the hearing before the commissioner, the defendant testified that his father was in the shrimp business; when Ho testified at the same hearing, he did not so describe the defendant's father's occupation. Nor did he refer to the subject at the first hearing in court. At the second, he not only spoke of the shrimp business, but asserted the partnership. Had his most recent testimony been deliberately refurbished in the pursuit of plausibility, something of this kind would have been in order.

It is difficult to assert that Ho's testimony is wholly incredible, and yet the alleged early knowledge on his part of the defendant's parents is scarcely convincing when it is reflected that no close personal associations have been shown, such as would cause an old family friend to come forward in the present emergency.

The most that can be said for Ho is that he was in San Francisco during the period covered by defendant's early years, including his birth, and therefore it would have been possible for him to know of such an event.

The statement made by the defendant at the time of his arrest contains admissions from which it might be concluded that, not having time to reflect upon the situation with which he was confronted, he stated that he came from San Francisco to New York by steamer, instead of by train as he testified in court; and that he didn't know if he was smuggled into this country from Cuba. That his grandfather was born in San Francisco, but he did not know where his father was born.

At the most recent court hearing, he was examined through an interpreter versed in the Hok Gar dialect, and volunteered many answers without the interpreter's assistance, indicating a very satisfactory command of the English tongue. In most respects, the statement made at the time of arrest corresponds with the testimony before the commissioner, and in court.

Defendant says he is an only child, and that his parents left him in this country in charge of an uncle when he was nine years of age; that the latter died within a year or two,

and a friend, now deceased, brought him to New York, and apparently supervised his progress until he sought employment, and has since supported himself.

No one is offered as a witness to corroborate any of the alleged incidents of his career since he has lived in and near this city, a matter of nearly twenty years, if his story is true. The only circumstance tending to verify any statement of his is that there was a Chinese restaurant at an Eighth avenue address in 1917, when and where he said he was employed for two years.

Sufficient time elapsed between the arrest in March, 1930, and the hearing of February 20, 1931, to have enabled the defendant to procure from his father a new letter setting forth the facts of birth as they are related by the defendant; perhaps even to have procured the taking of a deposition in the father's present abode. Neither of these things has been done.

The facts herein are not entirely unlike those presented in U. S. v. Hom Lim (C. C. A.) 223 F. 520, and a like conclusion is thought to be required upon the ground that the defendant has not sustained the burden of affirmative proof, which the law has laid upon him.

Order of the commissioner affirmed.